STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Julie BARTHELS, Defendant-Appellant.

Supreme Court

*No. 91-1361-CR. Oral argument October 8, 1992.—Decided February 23, 1993.*

(Also reported in 495 N.W.2d 341.)

173

For the plaintiff-respondent-petitioner the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Steven D. Phillips,* assistant State Public Defender.

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals[1] which reversed a judgment of the circuit court convicting Julie Barthels in a second trial following a mistrial granted on the motion of the state, over the objection of defendant, when the prosecutor, after the swearing of the jury, was unable to produce a key medical witness.

The question is whether the second trial constituted double jeopardy in violation of the defendant's rights or whether the act of granting the mistrial was justified by

---

[1] *State v. Barthels,* 166 Wis. 2d 876, 480 N.W.2d 814 (Ct. App. 1992), reversing a judgment of the circuit court for Sheboygan county, Timothy M. Van Akkeren, Judge.

"manifest necessity" or for the reason that the ends of public justice would otherwise be defeated, thereby permitting a second trial.

The factual posture of the issue is whether, applying "strict scrutiny" to a motion for mistrial made by the state, there was a "manifest necessity" for a mistrial when the prosecutor knew that his key witness likely would not be able to appear at trial, and yet the prosecutor failed to so inform the court until after the jury was sworn and the defendant was ready for trial. Further facts will appear hereafter.

We conclude that there was no "manifest necessity" of a mistrial reasonably demonstrated and that the defendant was, over her objection, tried for a second time and was convicted in violation of the guarantees against double jeopardy of both the United States and Wisconsin Constitutions. Accordingly, we affirm the court of appeals.[2]

Barthels was charged with sexual assault of her foster child.[3] The prosecution's case depended heavily upon the testimony of Dr. Basil Jackson, Barthels' attending

---

[2] A second issue is raised on this review—that even were the second trial not subject to reversal on grounds of double jeopardy, nevertheless, the jury was exposed to prejudicial information that would require that the verdict be set aside. The court of appeals found that such prejudicial contamination of the juror did occur and it reversed for that reason as well as for the double jeopardy violation. Once the court of appeals held there was double jeopardy the entire trial was a nullity, possible contamination of the jury was irrelevant, and the holding in that respect was clearly dictum. Accordingly, we do not address the jury contamination question and neither approve nor disapprove the dictum of the court of appeals in regard to jury prejudice.

[3] A separate charge for endangering her foster child's safety was also filed against Barthels but is not relevant to the question of double jeopardy with which we are concerned.

psychiatrist at St. Francis Hospital in Milwaukee, with whom Barthels had openly discussed her sexual and physical abuse of the child. Barthels sought by a motion in limine to exclude Dr. Jackson's testimony because it would violate her physician-patient privilege. At Dr. Jackson's suggestion, the state issued a subpoena to protect the doctor from Barthels' claim of privilege and to "make it easier for [his] patient."[4]

Several days prior to trial, Dr. Jackson informed the assistant district attorney that he would have to finish testifying by 10:30 a.m. because he and his wife were leaving for Tennessee in the afternoon.[5] Recognizing the potential conflict, the doctor suggested either a different trial date or a taped deposition. The prosecutor promised to do what he could to accommodate Dr. Jackson's schedule but offered neither a guarantee to Dr. Jackson nor a response proposed by the doctor's alternatives.

The court heard pretrial motions on July 9, 1992, two days before the commencement of trial. Matters such as jury selection and determining the admissibility of Dr. Jackson's testimony had been postponed until the morning of trial. Noting that some time would be required to dispose of these remaining pretrial matters,

---

[4] Dr. Jackson did not sign the admission of service until the morning of trial. Therefore, although the state asserts that the subpoena was intended to ensure Dr. Jackson's presence at trial, we find it more than likely that the subpoena's primary purpose was to reassure Dr. Jackson as to his rights and obligations as Barthels' attending psychiatrist. While the reason for the subpoena may lend credence to one or the other parties' assertions, it is not itself relevant to the lower court's erroneous finding of "manifest necessity."

[5] Dr. Jackson and his wife were scheduled to fly from Milwaukee to Tennessee on July 11, 1992, for a three-day graduate seminar at which the doctor was to be the sole lecturer.

the prosecutor informed the court that Dr. Jackson would "be going to Tennessee immediately after his testimony," thereby necessitating early and prompt court proceedings on the morning of trial. He did not, however, alert the court to Dr. Jackson's statement that he should have to finish his testimony by 10:30 a.m. Neither did he at that time request an adjournment to accommodate the doctor's scheduling conflict.[6]

On July 11, Dr. Jackson arrived at the courthouse at 7:00 a.m., the remaining pretrial motions were heard in chambers beginning at 8:30 a.m., and the jury was selected and sworn by 10:40 a.m. The assistant district attorney did not know that Dr. Jackson left the courthouse at 10:30 a.m. Immediately following the swearing-in of the jury, he learned that his witness had left and he then notified the court. Judge Van Akkeren excused the jury for lunch.

During the lunch break, the prosecutor reviewed the evaluation team's records from St. Francis Hospital and the waiver statement made as an offer of proof on the basis of Dr. Jackson's testimony. The prosecution ultimately concluded that confrontation requirements would not enable the state to sustain a conviction absent Dr. Jackson's testimony. Accordingly, the following exchange occurred after the break:

> *Mr. DeCecco:* [A]t this time, Your Honor, we would respectfully request the court to grant either a continuance or a mistrial in the matter due to the fact that an essential witness who had been subpoenaed in good faith . . . who did appear here earlier

---

[6] The prosecutor later testified that he hesitated requesting an adjournment because "there had already been [an] adjournment previous to that July 11th date, and . . . at that time the [c]ourt had indicated it would be extremely reluctant . . . to grant yet another adjournment . . . ."

179

today, and who despite . . . requests to remain to testify did indeed leave before his testimony . . .. We feel we cannot proceed and respectfully request the court to grant the State's motion.

*The Court:* Mr. Rostollan, any comment?

*Mr. Rostollan:* Well Your Honor, obviously we're in a difficult situation. We have gotten to this particular point. I appreciate the State's position. . . . I don't know how—obviously I would like this matter dismissed. I don't know if that dismissal at this point in time is a mistrial with prejudice or whatever along those lines. I guess I am sort of responding off the cuff to a motion that I had not had any time to look at.

Following this discussion and because of Dr. Jackson's absence, Judge Van Akkeren declared a mistrial, stating that "the State ha[s] made its attempt to have the witness present. The witness is not here and the court is not going to hold the State, call the State to task for that." The court discharged the jury. The court when granting the mistrial did not refer to the manifest necessity test that is appropriate to the granting or denial of a mistrial on motion of the prosecution. Nor did it consider the state's suggestion for a continuance. The court then set a date for trial. Prior to the date set, Barthels moved for dismissal of the information on grounds of double jeopardy.[7] The motion was denied by opinion and order on September 27, 1990.

Judge Van Akkeren later denied Barthels' motion for a continuance of the trial for the purpose of filing a petition for a discretionary appeal pursuant to sec.

---

[7] The relevant constitutional provisions are as follows:

No person . . . shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . .. U.S. CONST. amend. V.

[N]o person for the same offense may be put twice in jeopardy of punishment . . .. WIS. CONST., art. I, § 8(1).

808.03(2), Stats. After determining that the inconvenience occasioned by the adjournment outweighed the risk of unnecessarily subjecting Barthels to a second trial, the trial court affirmed its initial decision to grant the State's request for a mistrial. The court relied on three factors in reaching its initial decision: (1) the state had followed all necessary steps to ensure Dr. Jackson's presence; (2) the state would not be unfairly advantaged by a mistrial because Barthels had not yet disclosed her defense strategy; and (3) absent the state's complicity in the mistrial, dismissing the action would defeat the ends of justice.

The parties proceeded to trial. Barthels was convicted and sentenced to eight years in prison. The conviction was reversed by the court of appeals because it held the second trial unconstitutionally subjected Barthels to double jeopardy.

In construing Wisconsin's prohibition against double jeopardy, this court is guided by the rulings of the United States Supreme Court. *State v. Calhoun,* 67 Wis. 2d 204, 220, 226 N.W.2d 504 (1975); *Harrell v. State,* 88 Wis. 2d 546, 554, 277 N.W.2d 462 (Ct. App. 1979). We therefore begin our discussion by noting that Court's assessment of the underlying purpose for the prohibition, cautioning that:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well an enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88 (1957). *See also State v. Comstock*, 168 Wis. 2d 915, 937, 485 N.W.2d 354 (1992) (citing cases). To protect against prosecutorial harassment and to further public policies favoring judicial finality, jeopardy attaches as soon as the defendant has been put at risk of penalty or harm, namely: (1) when a witness is sworn in a trial to the court without a jury, or (2) when the selection of the jury has been completed and the jury sworn in a jury trial. *Comstock*, 168 Wis. 2d at 937.

The parties here agree that jeopardy attached when the jury was sworn at 10:40 a.m. on the morning of July 11. While this fact normally would preclude the state from pursuing a second trial against Barthels, the Supreme Court has permitted limited exceptions to the general prohibition against double jeopardy when the trial is terminated before reaching a final resolution on the merits but the state can demonstrate a "manifest necessity" for asking for a mistrial. *Arizona v. Washington*, 434 U.S. 497, 505 (1978); *State v. Copening*, 100 Wis. 2d 700, 709, 303 N.W.2d 821 (1981).

It is reasoned that criminal trials are often complicated and lengthy affairs during which numerous technical or otherwise unforeseen eventualities may arise that necessitate declaring a mistrial. Accordingly, the Court has recognized that a mechanical application of the rule against double jeopardy would unduly burden the state in its efforts to effectively prosecute crime and would "be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide." *United States v. Jorn*, 400 U.S. 470, 479–480 (1971). *See also Wheeler v. State*, 87 Wis. 2d 626, 630, 275 N.W.2d

651 (1979) (*quoting Illinois v. Somerville,* 410 U.S. 458, 462 (1973)). In deciding when the circumstances warrant a declaration of mistrial rather than dismissal, the Court will consider whether the state has adequately met its burden of demonstrating the "manifest necessity" for the termination of the trial. *Arizona v. Washington,* 434 U.S. at 505.

This court has previously relied on Justice Story's "manifest necessity test" which provides that:

> Courts of justice [may] discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

*Copening,* 100 Wis. 2d at 709 (*quoting United States v. Perez,* 22 U.S. (9 Wheaton) 579, 580 (1824)). The Supreme Court refined its definition of "manifest necessity" in *Arizona v. Washington,* in which the Court held that while the word need not be interpreted literally, a "high degree" of necessity must be found "before concluding that a mistrial is appropriate." *Arizona v. Washington,* 434 U.S. at 506.

Determining whether a "high degree" of necessity exists is a matter of discretion for the trial court. Whether circumstances warrant the granting of a mistrial can best be ascertained by the trial court judge. For example, the trial court judge is in the best position to determine whether the prosecution seeks a mistrial to gain unfair advantages over the defendant. The discretion of the trial judge in determining the "manifest necessity" for a mistrial was characterized in *Washington* as "broad." *Arizona v. Washington,* 434 U.S. at 509. Judge Van Akkeren was, after considering the facts, in

the best position, initially at least, to decide whether the state could reasonably proceed absent Dr. Jackson's testimony and whether the prosecution had taken prudent and adequate steps to ensure the witness' presence at trial.

The standard by which this court reviews the discretion exercised in granting a mistrial varies according to the facts of the particular case. If the defendant has requested or consented to a mistrial the court may reasonably infer that the defendant, whether for tactical or strategic reasons, has waived the right to be free from double jeopardy. In such situations the judge's determination deserves great deference on appeal. If, however, the prosecutor requests the mistrial, or the judge determines that the defendant's request was occasioned by prosecutorial overreaching or laxness, then this court gives stricter and more searching scrutiny to the judge's decision to grant a mistrial. *State v. Copening,* 100 Wis. 2d at 711 (citing *Downum v. United States,* 372 U.S. 734 (1963); *Arizona v. Washington,* 434 U.S. 497 (1978)). The most stringent scrutiny is afforded "when the basis for the mistrial is the unavailability of critical prosecution evidence." *Arizona v. Washington,* 434 U.S. at 508.

In the instant dispute, we are confronted with a situation in which the circuit court, over the defendant's objections,[8] granted the state's request for a mistrial because of the unexcused absence of a witness the state

---

[8] We agree with the court of appeals' assessment of the sufficiency of Barthels' objection to the prosecutor's motion. The defense attorney clearly requested a mistrial with prejudice or a dismissal. *See State v. Barthels,* 166 Wis. 2d at 884. *See also State v. Cleveland,* 118 Wis. 2d 615, 632, 348 N.W.2d 512 (1984) (discretionary right to review objections otherwise waived).

184

considered indispensable. We therefore review the decision of the circuit court with marked strictness. *See Downum,* 372 U.S. 734 (unexcused absence of state witness reviewed strictly).

The Supreme Court has declined to implement a per se rule prohibiting mistrials in the event of absent witnesses. *Downum,* 372 U.S. at 737. Also, this court has held that the circuit judge must consider the particular circumstances that led to the state's motion for a mistrial. In addition, judges should consider alternatives to a mistrial before depriving the defendant of the right to have the original tribunal render a final verdict. *Copening,* 100 Wis. 2d at 710–11. In this case, Judge Van Akkeren concluded that the state reasonably had relied upon the subpoena issued to Dr. Jackson and was therefore not culpable for the witness' disappearance. He disregarded the prosecutor's suggestion for a continuance, and determined that denying a mistrial would "defeat the ends of justice."

We agree with the court of appeals that the Supreme Court's reasoning in *Downum* controls this court's decision. *Barthels,* 166 Wis. 2d at 887. In *Downum,* the assistant prosecutor learned the day before trial that the marshal had been unable to locate and serve a necessary witness with his subpoena. Despite knowing this, the prosecutor permitted the jury to be selected and sworn. Quoting with approval from a circuit court opinion, the Supreme Court stated:

> The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case in view of the facts that they were under bond to appear at that time and place, the question presented here is entirely different from

that involved in the exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict.

*Downum,* 372 U.S. at 737 (quoting *Cornero v. United States,* 48 F.2d 69, 71 (9th Cir. 1931)). The Court refused to excuse the prosecutor's decision to proceed with the swearing of the jury without determining whether all necessary witnesses were present. The prosecutor had taken a chance and had to live with the consequences of his decision.

Like the prosecutor in *Downum,* the prosecutor here took a chance when he allowed Judge Van Akkeren to swear the jury before having ascertained that Dr. Jackson was present to testify. The state asserts that, unlike *Downum* in which the prosecution had neither served the witness with a summons nor made other arrangements to ensure his presence, the prosecutor's decision to proceed was reasonable in light of the fact that Dr. Jackson had been subpoenaed to testify on July 11. We decline under the facts here to hold the issuance of a subpoena *ipso facto* sufficient to uphold the grant of a mistrial due to a witness' unexcused absence.

Looking instead to the totality of the circumstances, we find that, even though the state secured the presence of Dr. Jackson on the morning of July 11th, the prosecutor failed to take reasonable precautions to ensure that the doctor remained present. Although the prosecutor knew that several motions remained for decision on the morning of trial and the jury had to be drawn, he did nothing to disabuse Dr. Jackson of the notion that his testimony could be completed by 10:30 a.m. As the court of appeals stated:

The state's actions here were conducted either in ignorance of, or in reckless disregard for, Barthels' constitutional right to have the question of her guilt or innocence concluded before the first tribunal selected for this task. We conclude that the state may not so blithely wash its hands with Dr. Jackson's subpoena.

*Barthels,* 166 Wis. 2d at 889.

The state argues that courts in other jurisdictions have permitted mistrials when a prosecutor's witness fails to appear at trial.[9] We find these cases inapposite for several reasons, not the least of which is the fact that Dr. Jackson told the assistant district attorney that his testimony had to be completed so that he could leave no later than 10:30 a.m. Unlike the facts in the cases relied upon in the state's brief in which witnesses were suddenly taken ill or unexpectedly left town, the assistant

---

[9] *See, e.g., Scott v. D'Amico,* 566 N.Y.S.2d 181, 182 (A.D. 4 Dept. 1991) (subpoenaed witness failed to appear at trial despite being informed of the obligation the day before); *United States v. Gallagher,* 743 F. Supp. 745, 745-46 (D. Or. 1990) (accomplice refused to testify after entering into a cooperation agreement with the government); *Commonwealth v. Corbett,* 533 N.E.2d 207, 210-12 (Mass. App. Ct. 1989) (child witness found temporarily incompetent after taking the stand); *Hughey v. State,* 522 A.2d 335, 337-38 (Del. Supr. 1987) (out of state witness came to town but failed to appear at trial); *White v. State,* 460 N.E.2d 132, 133-35 (Ind. 1984) (pathologist involved in performing autopsy refused to testify as to certain medical conclusions); *State v. Connery,* 679 P.2d 1266, 1267 (Nev. 1984) (witness attempted suicide the evening after the jury was impaneled); and *Hall v. Potoker,* 403 N.E.2d 1210, 1211-12 (N.Y. 1980) (prosecutor learned of witness' hospitalization only after making his opening statement); *United States ex rel. Gibson v. Ziegele,* 479 F.2d 773, 775-77 (3d Cir. 1973), *cert. denied,* 414 U.S. 1008 (1973) (witness fell ill before testifying).

attorney had advance notice that his witness would not be able to stay later than 10:30 a.m.; nevertheless he failed to take any precautions to ensure the doctor's presence or to make other arrangements with the court and the defendant.

The state also argues that Wisconsin courts have declared mistrials in situations of defendant misconduct or manipulation.[10] The argument is totally inapplicable to the facts of this case. The facts of the instant case do not suggest to this court the slightest hint of misconduct on the part of Barthels' attorney. To the contrary, we find that the facts before us suggest that the state was less than totally forthright. Despite being forewarned of Dr. Jackson's intentions, the prosecutor neither informed the court of the doctor's statements nor checked to make sure the witness was present before the jury was sworn. The state was not the innocent victim of witness misconduct; rather, the prosecutor tried to avoid the judge's displeasure by not telling him of the likely need for a second continuance. We agree with Barthels' attorney's assessment that the prosecutor was "playing both ends against the middle." He failed to disclose the whole truth to either the witness or the court. The court granted the mistrial without considering or determining that the prosecutor should have known that he was very likely to face the trial commencement deadline without a necessary witness. The undisputed facts demonstrate

[10] *See, e.g., State v. Fosse,* 144 Wis. 2d 700, 706-07, 424 N.W.2d 725 (Ct. App. 1988) (defense counsel gave misleading advice to prosecution witness); *State v. Duckett,* 120 Wis. 2d 646, 650-51, 358 N.W.2d 300 (Ct. App. 1984) (defense counsel's opening statement called into question prosecutor's motivations); and *State v. Reid,* 166 Wis. 2d 139, 143, 479 N.W.2d 572 (Ct. App. 1991) (defense witness committed perjury).

that the prosecutor did not act reasonably or take reasonable precautions in assuring the presence of an indispensable witness. Under these circumstances, it was error to have declared a mistrial.

We further conclude that the circuit court failed to exercise appropriate discretion when it granted a mistrial without considering other alternatives. In *Copening,* we stated that "courts considering a mistrial declaration sua sponte or on the motion of the prosecutor should consider other alternatives before depriving a defendant of the valued right to keep his confrontation with society before the original tribunal." *Copening,* 100 Wis. 2d at 711. In the instant case, despite the prosecutor's specific request for "either a continuance or a mistrial," the court chose to declare a mistrial without further consideration. While under the circumstances of this case a continuance might have been inappropriate, a proper exercise of discretion requires that both the state and defendant are ill served when the possibility of a continuance is not weighed as an alternative. We caution courts against depriving defendants of the right to be free from being put twice in jeopardy.

For the foregoing reasons, we conclude that under the circumstances here, where the prosecutor failed to act prudently or reasonably in view of the likelihood of the absence of an essential witness, the circuit court erred in declaring a mistrial merely upon being informed of the unexcused absence of that witness. The defendant cannot constitutionally be subjected to double jeopardy. We accordingly affirm the court of appeals' dismissal of the complaint with prejudice.

*By the Court.*—Decision of the court of appeals affirmed.