STATE of Wisconsin, Plaintiff-Respondent,†

v.

Calvin L. COLLIER, Defendant-Appellant.

Court of Appeals

*No. 97–2589–CR. Submitted on briefs May 20, 1998.—Decided July 8, 1998.*

(Also reported in 584 N.W.2d 689.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph E. Redding* of *Glojek Limited,* West Allis.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *Thomas J. Balistreri,* assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. Calvin L. Collier appeals from judgments of conviction for two counts of second-degree sexual assault and two counts of child enticement and from orders denying his motion to dismiss on double jeopardy grounds and his motion for postconviction relief. Collier was convicted after a fourth jury trial. Collier alleges that his double jeopardy rights were violated when the trial court improperly granted the

State's request for a mistrial (during the second trial) and ordered a new trial (the third trial). The crux of Collier's argument is that there was no manifest necessity for the mistrial. The State counters that Collier waived his double jeopardy argument because he accompanied his double jeopardy objection with an alternative request for a new trial on other grounds (due to the replacement of a sitting juror during the third trial without consulting Collier).

We disagree that Collier waived this double jeopardy argument. The State requested a mistrial after jeopardy had attached, and Collier consequently objected on double jeopardy grounds and later raised alternative grounds for lesser relief. He renewed his double jeopardy argument throughout the proceedings. We do not view this as abandonment of the double jeopardy argument. As to the merits, we conclude that trial counsel's question was not improper—based on the prior exchange between counsel and the witness—and, therefore, the trial court improperly granted the State's motion for a mistrial. Even if trial counsel's question were improper, we conclude that a curative instruction to the jury would have presumptively erased any potential prejudice to the State.

### FACTS AND PROCEDURAL BACKGROUND

The facts essential to this appeal are as follows. In March 1994, Collier was charged with two counts of second-degree sexual assault and two counts of child enticement. The charges stemmed from two alleged incidents of sexual intercourse between Collier and Tamara P., who was fourteen at the time, that took place in two separate time periods during an evening in November 1993. Tamara alleged that she "[made] it

perfectly clear to him [she] didn't want to have sex."
She reported the alleged assaults in early December.

Collier was bound over for trial and subsequently
pled not guilty to the charges. The first jury trial com-
menced on August 29, 1994. During its remarks to the
jury, the trial court stated that Collier was charged
with child enticement as a repeater. Collier's motion
for a mistrial was granted.

The second trial began the next day. While cross-
examining the victim, defense counsel attempted to
verify that Tamara had not sought treatment for any
bruises or injuries from the alleged assaults. Tamara
affirmed that she did not seek medical treatment for
any injuries, but she went to Planned Parenthood for a
pregnancy test and to be "checked out for diseases and
stuff." Defense counsel asked, "And that was nega-
tive?" to which Tamara responded, "All except for the
one . . . I had crabs. . . . Crabs from him." Counsel
questioned whether she was claiming that she
obtained crabs from Collier and she said, "Yes." When
asked for proof, she denied having them before. Coun-
sel then asked, "Well, didn't you tell the officer that you
had had sex before that?"[1] At this point, the State

---

[1] The colloquy was as follows:

Q: So you never actually sought any medical treatment for any
 kind of bruises or injuries that you might have received,
 correct?

A: Correct.

Q: The only purpose in going to Planned Parenthood was a preg-
 nancy test?

A: And to get checked out for diseases and stuff like that.

Q: And that was negative?

A: All except for the one, yes. I had crabs.

Q: Cramps?

A: Crabs from him.

objected and proceedings were held outside the presence of the jury. The State moved for a mistrial on the grounds that the defense counsel's question, although not answered, violated the Rape Shield Law and there was no way to cure the error in front of the jury. Despite concerns of double jeopardy, the trial court agreed that the State's case depended on the credibility of the witness and the question substantially prejudiced the case, and on this basis it granted the mistrial.

Consequently, Collier filed a motion to dismiss contending that any retrial would violate his double jeopardy rights. The motion was denied and a third jury was sworn on October 3, 1994. During jury deliberations, a sitting juror was replaced with an alternate. Collier was not present for the decision nor was he consulted. Collier was subsequently found guilty on all four counts.

In March 1995, Collier filed a postconviction motion to vacate his conviction on the grounds that his retrial, following the declaration of a mistrial over his objection, violated his constitutional protection against double jeopardy. Alternatively, he moved for a new trial because of the improper substitution of the juror. Lastly, Collier moved for a new sentence on the grounds that the court failed to consider the applicable sentencing guidelines. The trial court did not address

Q: Crabs?

A: Yes.

Q: And you claim that you received that from him?

A: Yes.

Q: What proof do you have of that?

A: I didn't have it before that.

Q: Well, didn't you tell the officer that you had had sex before that?

the double jeopardy or sentencing issues, but eventually granted a new trial based on the improper juror substitution.[2]

Prior to the fourth trial, Collier filed a pro se petition for a writ of habeas corpus in this court. This court denied his petition concluding that his double jeopardy and other arguments were not supported by a discussion of the facts and law and he failed to demonstrate that if he were convicted following a retrial, his remedy by appeal would be inadequate. Collier also renewed his objection to a new trial on double jeopardy grounds before the trial court. The court denied the motion as well.[3] On December 9, 1997, the fourth jury trial commenced and Collier was found guilty on all four counts without a hitch. Collier was sentenced to twenty-six years in prison for counts one and two and thirty-two years of probation, consecutive to the prison term, on counts three and four. Collier filed another motion to

---

[2] On May 16, 1995, the trial court initially denied Collier's motion, but stated that the reasons would be set forth in a memorandum to follow. On May 24, 1995, the court granted Collier's motion and ordered a new trial. The State first appealed and then sought reconsideration of that order contending that the trial court lacked authority to enter the May 24 order because the time limits of § 809.30(2)(i), Stats., had expired. The State then dismissed its appeal and the court entered an order dated July 27, 1995, adopting the State's position and vacating the May 24 order as a nullity. Collier appealed to this court and we extended the time limits to allow the trial court to act on Collier's postconviction motion (to vacate the July 27 order which declared the May 24 order a nullity). The trial court then granted Collier's postconviction motion on the alternate grounds.

[3] Collier again petitioned this court for leave to appeal the trial court's order denying his motion to dismiss on double jeopardy grounds. We denied the petition.

dismiss on double jeopardy grounds and a motion for a new trial based on ineffective assistance of counsel. Both motions were denied. Collier appeals.

## DISCUSSION

On appeal, Collier renews his double jeopardy claim based on the State's requested mistrial. While conceding that Collier "initially preserved his right to assert a defense of double jeopardy," the State nevertheless maintains that by requesting and receiving the alternative remedy of a new trial, which occurred after the third trial, Collier is now precluded from seeking review of the favorable decision—a new, fourth trial—even though it simultaneously denied him a different remedy—dismissal based on the double jeopardy claim.[4] The State posits that Collier's subsequent motion seeking to dismiss the fourth prosecution on double jeopardy grounds, which was filed after his motion for a new, fourth trial was granted but before the trial began, was too late; according to the State, " Collier had already relinquished his double jeopardy defense." The State is essentially arguing that Collier

---

[4] The State cites to *State v. Castillo*, 213 Wis. 2d 488, 570 N.W.2d 44 (1997), in support of this waiver argument. However, *Castillo* is not a waiver case; in fact, it does not use the word waiver. Rather, the supreme court concluded that the case did not present an adverse decision by the court of appeals, as claimed by Castillo, and thus, review had been improvidently granted. *See id.* at 493, 570 N.W.2d at 46. The case before us is significantly different. Here, Collier prominently objected on double jeopardy grounds at every juncture and only after the third trial raised alternative grounds for lesser relief. Under the circumstances, we cannot say that the mistrial was declared with Collier's consent.

abandoned his double jeopardy argument when he succeeded in getting a fourth trial.

We disagree. It is uncontested that Collier made repeated motions for dismissal based on double jeopardy grounds, the most important of which occurred after the State decided to try him a third time. *See State v. Mink*, 146 Wis. 2d 1, 10, 429 N.W.2d 99, 102 (Ct. App. 1988) (once state decides to try the defendant again, the defendant must move for dismissal on double jeopardy grounds to avoid waiver). Collier requested a dismissal because of the mistrial during the second trial. Then after the third trial, he again asked for a dismissal and, in the alternative, he requested the less drastic remedy of a new trial based on the improper replacement of a juror. This does not constitute waiver. The State's position also ignores the fact that the alternative motions were based on distinct events—a mistrial and the replacement of a sitting juror—in two different trials—the second and third trials, respectively. If Collier had asked for alternative relief from one single event, the State may have had a valid point. But that is not what occurred. We also disagree that the fact that the subsequent trials proceeded despite Collier's double jeopardy protests equates to Collier having abandoned his double jeopardy argument. Collier "yelled" long enough and loud enough to preserve his double jeopardy argument for appeal.

■

Turning to the merits, we note that the Fifth Amendment to the United States Constitution provides that a state may not put a defendant in jeopardy twice for the same offense. *See Arizona v. Washington*, 434 U.S. 497, 503 (1978). Jeopardy attaches when the jury selection is completed and the jury is sworn. *See*

§ 972.07(2), STATS.; *see also State v. Barthels*, 174 Wis. 2d 173, 182, 495 N.W.2d 341, 345 (1993). Because jeopardy attaches before the judgment becomes final, the constitutional protection "embraces the defendant's 'valued right to have his [or her] trial completed by a particular tribunal.' " *Washington*, 434 U.S. at 503. The underlying purpose of the prohibition against double jeopardy is that:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him [or her] to embarrassment, expense and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he [or she] may be found guilty.

*Barthels*, 174 Wis. 2d at 181–82, 495 N.W.2d at 345 (quoted source omitted).

When the State moves for a mistrial over the objection of the defense, a trial court may not grant the motion unless "there is a manifest necessity for the [act], or the ends of public justice would otherwise be defeated." *State v. Copening*, 100 Wis. 2d 700, 711, 303 N.W.2d 821, 827 (1981) (quoted source omitted). The manifest necessity test provides that "[c]ourts of justice [may] discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act." *Barthels*, 174 Wis. 2d at 183, 495 N.W.2d at 346 (quoted source omitted). The test, however, is not literal, and a "high degree" of necessity must be found before a mistrial is appropriate. *See id.*

834

Whether a "high degree" of necessity exists rests within the trial court's discretion because that court is in the best position to determine whether the state seeks a mistrial to gain unfair advantage over the defendant. *See id.* The standard by which we review the court's decision to grant a mistrial varies according to the facts of the particular case. *See id.* at 184, 495 N.W.2d at 346. If the state requests the mistrial, we give stricter and more searching scrutiny to the judge's decision than had the defendant requested or consented to it. *See id.* In exercising its discretion, the trial court must examine the circumstances leading to the state's motion and should consider the alternatives before depriving the defendant of the right to have the original tribunal render a final verdict. *See id.* at 185, 495 N.W.2d at 347. If we are presented with a close case, the United States Supreme Court advises us to resolve doubts about the propriety of a mistrial in favor of the liberty of a citizen. *See United States ex rel. Russo v. Superior Court of N.J.,* 483 F.2d 7, 17 (3rd Cir. 1973).

Collier argues there is no manifest necessity for a mistrial because (1) defense counsel's question was proper and he was seeking admissible evidence, (2) even if the question was improper, it was never answered, or (3) even if the evidence was not relevant, a curative instruction would have sufficed. The State responds that the mistrial was brought on by defense counsel's conduct; once counsel realized that the victim was talking about "crabs," counsel sought to get into evidence knowledge from a police report that the victim had previously had sex with another. The State contends that the proper course would have been to have the "crabs" answer struck as unresponsive.

The trial court never made an explicit finding of manifest necessity. Rather, it stated:

I do agree . . . that at the time it was asked it was an improper question and it was of such magnitude as to prevent a fair trial because the fear is very real . . . that the jury would view the complaining witness as an unreliable person because of promiscuity. . . . [I]t's going to be a close credibility question anyway. . . . [I]t certainly seems to me [this] might be quite major in this trial.

And for that reason . . . [the] motion for mistrial is . . . granted.

Our review of the record reveals the following. The State asked the victim if she sought "any kind of medical or nursing treatment after this?" She verified that she "went to Planned Parenthood and got [her]self all checked out and everything." On cross-examination, defense counsel attempted to clarify the purpose of the visit to Planned Parenthood, i.e., a pregnancy test rather than physical injuries sustained from the assaults. In response, the victim stated that she had received "crabs" from Collier and that she knew this because she did not have them before the alleged assaults. With this accusation in place, Collier was entitled to pursue the possibility that the condition resulted from the victim's previously admitted sexual encounter—an admission made in a statement to the police. The critical question, "Well, didn't you tell the officer that you had had sex before that?" was not improper given the backdrop of the prior exchange between the prosecutor and the victim on direct examination and defense counsel and the victim on cross-examination. Therefore, we do not agree that the ques-

tion was either improper or unethical, thus warranting a retrial.[5]

Even assuming that the question was improper, there was still no basis for granting a mistrial. Not all errors warrant a mistrial; "the law prefers less drastic alternatives, if available and practical." *State v. Bunch*, 191 Wis. 2d 501, 512, 529 N.W.2d 923, 927 (Ct. App. 1995). A mistrial is appropriate only when a "manifest necessity" exists for the termination of the trial. *See id.* at 507, 529 N.W.2d at 925.

In this case, the question was never answered—the jury never heard the potentially prejudicial answer. Although the framing of the question may have been suggestive of the answer, the trial court could have given a curative instruction to disregard the improper question. Potential prejudice is presumptively erased when admonitory instructions are properly given by a trial court. *See State v. Williamson*, 84 Wis. 2d 370, 391, 267 N.W.2d 337, 347 (1978).

---

[5] Further, in his defense, Collier would have the right to rebut the incriminating inference that he was the source of the victim's "crabs." In *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), the supreme court recognized that under certain circumstances § 972.11, STATS., may impermissibly infringe upon a defendant's constitutional right to cross-examine witnesses and to present a defense. *See id.* at 647–48, 456 N.W.2d at 331. The source of a sexually transmitted disease is one of those limited circumstances in which evidence of the victim's prior sexual conduct is viewed as probative of a material issue without being overly prejudicial. *See id.* at 644, 456 N.W.2d at 330; *see also State v. Dodson*, 219 Wis. 2d 65, 77–80, 580 N.W.2d 181, 188–89 (1998).

██

In fact, as suggested by the State, the victim's "crabs" answer could have been struck and the jury told to disregard the answer and any inference that it might raise. The court also could have precluded counsel from asking about the victim's sexual history and similarly instructed the jury that the question was not evidence, it was an improper question and the jury should disregard the question and any inference that it might raise. "Courts considering a mistrial . . . on the motion of the prosecutor should consider other alternatives before depriving a defendant of the valued right to keep his confrontation with society before the original tribunal." *Barthels*, 174 Wis. 2d at 189, 495 N.W.2d at 348 (quoted source omitted). Exercising proper discretion requires considering the possibility of an alternative measure to a mistrial, or else both the state and the defendant are ill served. *See id.* at 189, 495 N.W.2d at 349. A curative instruction would have been the least drastic but most effective method of addressing the problem, and the trial court's failure to consider it constitutes a misuse of discretion.

In fact, there are endless examples, some published, but most unpublished, in which the effects of testimony elicited by the state that are unfavorable to the defendant have been erased or rectified through a curative instruction. *See, e.g., State v. Camacho*, 176 Wis. 2d 860, 885, 501 N.W.2d 380, 390 (1993) (where defendant charged with shooting deputy sheriff and defendant testified that deputy grabbed him by hair and pointed gun in his face without provocation, defendant's motion for mistrial on grounds of improper prosecutorial conduct was properly denied because prosecutor's statement that if defendant's testimony were true, conduct of deputy was unlawful was abso-

lutely correct); *State v. Hagen*, 181 Wis. 2d 934, 947–49, 512 N.W.2d 180, 185 (Ct. App. 1994) (trial court's instruction to jury to disregard prosecutor's reference to defense counsel's "sleazy bag" of tricks and "unethical behavior" and the curative instruction that followed defused the impact of improper attorney argument to defendant's right to a fair trial); *State v. Quinn*, 169 Wis. 2d 620, 622–24, 486 N.W.2d 542, 543 (Ct. App. 1992) (trial court's finding that the prosecutor's statement that conviction was for "beating somebody up" instead of for disorderly conduct was not intended to provoke a mistrial is not clearly erroneous); *but cf. Barthels*, 174 Wis. 2d at 188–89, 495 N.W.2d at 348–49 (where prosecutor failed to act reasonably in view of likelihood of the absence of an essential witness, circuit court erred in declaring mistrial upon being informed of the unexcused absence of witness). Certainly the playing field should be level when the shoe is on the other foot.

The "manifest necessity" test is a high one. Examining the totality of the circumstances, we conclude that there was no manifest necessity justifying the mistrial. We therefore conclude that the trial court erroneously exercised its discretion in granting the mistrial. Accordingly, we reverse the judgments and the orders.

*By the Court.*—Judgments and orders reversed.