PER CURIAM.
¶ 1 Romaine Reed appeals a judgment, entered upon a jury's verdict, convicting him of repeated sexual assault of the same child, with at least three violations constituting first-degree sexual assault, contrary to WIS. STAT. § 948.025(1)(d) (2015-16).[1] Reed also appeals the order denying his post-conviction motion for a new trial.[2] Reed challenges the sufficiency of the evidence to support the jury's verdict. Reed also argues the circuit court erred by denying his motions for a mistrial and by overruling his objections to witness testimony. Reed additionally asserts that the circuit court erroneously exercised its discretion when it denied his post-conviction motion without conducting an evidentiary hearing. Reed alternatively claims he is entitled to a new trial in the interest of justice. We reject Reed's arguments and affirm the judgment and order.
BACKGROUND
¶ 2 In April 2014, the State charged Reed with the repeated sexual assault of then-three-year-old Annie,[3] alleging the assaults occurred between dates in May and August 2012. At trial, the jury heard testimony from a number of witnesses, including Annie's mother, Melanie. Reed objected to a statement made by Melanie at trial about a previously undisclosed claimed incident of sexual assault of Annie by Reed, and he moved for a mistrial. The circuit court denied the mistrial motion, sustained the objection, and instructed the jury to disregard the challenged testimony. After a trial, the jury found Reed guilty of the crime charged.
¶ 3 Before sentencing, Reed renewed his request for a mistrial based on Melanie's stricken testimony and also filed a "motion to dismiss," alleging there was insufficient evidence to support the verdict. The circuit court denied Reed's motions and sentenced him to thirty years' initial confinement followed by fifteen years' extended supervision. Reed's post-conviction motion for a new trial was denied without a hearing, and this appeal follows.
DISCUSSION
A. Sufficiency of the Evidence
¶ 4 Reed argues the circuit court erred by denying his motion to dismiss, which was based on his assertion that the evidence was insufficient to support the verdict. Whether the evidence supporting a conviction is direct or circumstantial, we utilize the same standard of review regarding its sufficiency. State v. Poellinger , 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). We must uphold Reed's conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."Id. If there is a possibility that the jury "could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," we must uphold the verdict even if we believe that the jury "should not have found guilt based on the evidence before it." Id. at 507.
¶ 5 It is the jury's function to decide the credibility of witnesses and reconcile any inconsistencies in the testimony. State v. Toy , 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). Thus, if more than one inference can be drawn from the evidence, this court will follow the inference that supports the jury's finding "unless the evidence on which that inference is based is incredible as a matter of law." Poellinger , 153 Wis. 2d at 506-07. Moreover, a jury is free to piece together the bits of testimony it found credible to construct a chronicle of the circumstances surrounding the crime. See State v. Sarabia , 118 Wis. 2d 655, 663-64, 348 N.W.2d 527 (1984). Further, "[f]acts may be inferred by a jury from the objective evidence in a case." Shelley v. State , 89 Wis. 2d 263, 273, 278 N.W.2d 251 (Ct. App. 1979).
¶ 6 To find Reed guilty of repeated sexual assault of a child contrary to WIS. STAT. § 948.025, the State had to prove that Reed committed at least three sexual assaults of Annie and that the sexual assaults took place within a certain period of time. See WIS. JI- CRIMINAL 2107. Here, the relevant period of time was May 5, 2012, through August 18, 2012. Reed does not appear to dispute that there was sufficient evidence of the assaults. Rather, he argues there was not enough evidence to support the State's alleged time frame.
¶ 7 Annie, who was five years old at the time of trial, testified that when she was three years old, Reed put his penis in her bottom and in her mouth, and that he did this more than twice. Annie stated that the assaults happened in the bathroom at her mother's "old house." Annie also testified that Reed called what came out of his penis during the assaults "yogurt" and that he made her eat it.
¶ 8 Annie's mother, Melanie, testified that Annie was born in January 2009. In January 2012, Melanie moved with Reed and Annie to a home on North 57th Street in Milwaukee, and she gave birth to a baby boy in August of that year. Melanie stated that during May and June of 2012, Reed would often be home alone with Annie while Melanie was at work. Melanie added that Annie started wetting her pants in May of 2012. Melanie further testified that in November of 2012, Annie told her "[Reed] kisses my snood," which is a term the family used to refer to the vagina. Melanie also testified that on another occasion, while Annie was eating cherries, she "looked at it and kind of felt it and said, this is what [Reed's] wicky feels like"-wicky being the word the family used to refer to a penis. According to Melanie, Annie said that Reed "put his penis in her mouth" and told her to touch his penis and move her hand up and down. Melanie further testified that in January 2013, she called police after Reed slapped Annie twice. Melanie added that from January 2013 until the August 2014 trial, Annie had not seen Reed.
¶ 9 Melanie's mother, Cecilia, testified that although Annie had been potty-trained since she was two-and-a-half years old, she began wetting her pants in the summer of 2012, when she was three-and-a-half years old. Cecilia further testified that in the fall of 2012, Annie brought "concerns" to her attention and she relayed those concerns to Melanie. Cecilia added that a couple months after Reed had been arrested for slapping Annie, Annie told her things that were "more alarming" than what Cecilia heard her say in the past. Cecilia told Melanie to contact the police and also contacted the police herself. Cecilia also testified that after January 2013, Annie lived at Cecilia's house.
¶ 10 Melanie's brother, Brian, testified that shortly after the January 2013 slapping incident, he noticed Annie was acting differently and she revealed to him that Reed had pulled her pants down and "humped her on the butt." Brian also testified that Annie said "yogurt" came out of Reed's "stuff."
¶ 11 Rebecca McFadden, a social worker for the Milwaukee Bureau of Child Welfare, testified that she recorded an interview with Annie in October 2013.[4] The jury was shown the interview, in which Annie told McFadden that Reed "put his wicky in [her] mouth." Annie said the assaults happened in the bathroom and living room of the house they used to live in while her mom was at work. Annie recounted that Reed told her, "[Annie], do my wicky like this," and Annie then simulated masturbating a penis while stating that "yogurt" came out of Reed's penis. Annie said the yogurt tasted like "stinky water."
¶ 12 Putting all the evidence together, and viewing it in the light most favorable to the guilty verdict, a reasonable jury could find the State proved beyond a reasonable doubt that at least three sexual assaults took place between May 5, 2012 and August 18, 2012. It is reasonable to infer the assaults occurred during this time frame because the evidence showed Annie was three years old when Reed assaulted her, Melanie was at work during the time of the assaults, and the assaults occurred at the home on North 57th Street. Moreover, the State need not prove the dates of the offenses with absolute precision. See Hess v. State , 174 Wis. 96, 99, 181 N.W. 725 (1921). "[U]nless some material right of the defendant is affected, as, for example, when such change might bring the alleged offense within some period of statutory limitation, the prosecution is not formally tied to" the date alleged in the Information. Id. The State may satisfy its burden of proof by showing the crime was committed "on some other day within a reasonable limitation." Id. Reed has not established how any variations between the dates charged and any dates that were part of the trial evidence were not "within a reasonable limitation." The evidence submitted at trial is sufficient to support Reed's conviction.
B. Mistrial
¶ 13 As recounted above, Annie's mother, Melanie, testified regarding comments Annie had made about how Reed's penis looked and felt; how Reed touched her vagina; and how Reed put his penis in Annie's mouth. Melanie then testified that Annie revealed another incident in which Reed "got in bed with [Annie] and pulled the covers on top of her and started grinding on her from behind." Reed objected, arguing that this alleged incident had not been disclosed and that Melanie had never previously reported it. Reed also moved for a mistrial based on this testimony, both during trial and after the verdict.
¶ 14 Whether to grant a mistrial is within the circuit court's discretion. See State v. Bunch , 191 Wis. 2d 501, 506, 529 N.W.2d 923 (Ct. App. 1995). The circuit court must assess, in light of the whole proceeding, whether the basis for the mistrial request is sufficiently prejudicial to warrant a new trial. See id. We will uphold the circuit court's discretionary decision if it examined the relevant facts, applied a proper legal standard, and employed a rational decision-making process. See id. at 506-07. Not all errors warrant a mistrial, and it is preferable to employ less drastic alternatives to address the claimed error. State v. Adams , 221 Wis. 2d 1, 17, 584 N.W.2d 695 (Ct. App. 1998).
¶ 15 Here, the circuit court denied the mistrial motion, but it sustained the objection and immediately cautioned the jury that it could not consider that testimony. The court instructed the jury as follows:
[T]he court is ordering that the last answer given by [Melanie] be stricken from the record. [Melanie] had been previously interviewed by [the police] ... [and Melanie] did not in that interview report that her daughter [Annie] ever told her that [Reed] got in her bed, covered the two of them up, and got on [Annie] and started grinding from behind.
Further, [Melanie] was interviewed by [the prosecutor], the victim coordinator for the DA's office, and [another police officer]. When discussing disclosures by [Annie], [Melanie] did not disclose the statement allegedly relating to [Annie] and Mr. Reed being in bed, the covers over them, while Mr. Reed got on top of [Annie] and started grinding from behind.
Today on the witness stand is the very first time [Melanie] claims that [Annie] made that statement. As you are aware, [Annie] did not testify that any such act occurred nor did she make any statement during any of the forensic interviews that you have seen on video with [police] or [the social worker].
The objection is sustained, the testimony is stricken from the record, and the jury is to disregard the testimony by [Melanie] and may not consider it in any way in reaching any verdict in this case.
¶ 16 The circuit court then polled the jury to confirm that everyone understood the instruction, and all jurors indicated that they both understood the instruction and agreed to follow it. We presume that the jurors acted in accordance with this instruction. See State v. Edwardsen , 146 Wis. 2d 198, 210, 430 N.W.2d 604 (Ct. App. 1988). These steps were sufficient to address any potential prejudice. See State v. Collier , 220 Wis. 2d 825, 837, 584 N.W.2d 689 (Ct. App. 1998) ("Potential prejudice is presumptively erased when admonitory instructions are properly given by a trial court."). Further, this minimal testimony that the jury was instructed to disregard was insignificant when compared to the other evidence-particularly Annie's own testimony of the assaults. The drastic remedy of a mistrial was not necessary.
C. Admission of Testimony
¶ 17 Reed argues the circuit court erred by failing to sustain his objections to portions of Cecilia's testimony. The admissibility of evidence lies within the circuit court's sound discretion. State v. Pepin , 110 Wis. 2d 431, 435, 328 N.W.2d 898 (Ct. App. 1982). We will uphold an evidentiary ruling if we conclude the circuit court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." State v. Walters , 2004 WI 18, ¶ 14, 269 Wis. 2d 142, 675 N.W.2d 778. Further, the circuit court's discretionary decision whether to admit evidence is subject to the harmless error rule. State v. Hunt , 2014 WI 102, ¶ 21, 360 Wis. 2d 576, 851 N.W.2d 434. The test for determining if an error is harmless is whether there is a reasonable possibility that the error contributed to the conviction. State v. Dyess , 124 Wis. 2d 525, 542-43, 370 N.W.2d 222 (1985). The beneficiary of the error bears the burden of proving no prejudice. Id. at 543. Whether an error is harmless presents a question of law that this court reviews de novo. Hunt , 360 Wis. 2d 576, ¶ 21.
¶ 18 At trial, the prosecutor asked Cecilia why she did not involve Melanie in her decision to make an additional report of Annie's allegations to police. Reed's objection on relevancy grounds was overruled, and Cecilia answered:
Because [Annie] was actually there with me, and she came out with a lot more details than what she initially told me and [Melanie]. I didn't press her for anything because I wanted her to just tell me so that, you know, I didn't make any assumptions or, you know, lead her in any way. I just wanted her to tell me. I was information seeking.
The prosecutor then asked: "How were you conscious of not leading her in any way, tell me about that?" Reed's objection on relevancy grounds was again overruled, and Cecilia answered:
When I spoke with the police the first time, you know, I asked them what the process for that was and, you know, I have relatives that had this happen to. And, you know, it's just kind of-I know I have a degree in criminal justice, and I just kind of know. You want to make sure that, you know, you don't do anything to taint what's happening with them.
¶ 19 Reed argues the circuit court erred by overruling his objections to this testimony because, in addition to being irrelevant, the statements inappropriately suggested Cecilia had some expertise in questioning a child, thus bolstering the credibility of Annie's statements. We conclude that even if the circuit court erred by allowing the challenged testimony, its admission was harmless. Cecilia was a witness for the State and testified about bringing her granddaughter to the police to report the assaults. Because the jury would have already understood that Cecilia believed her granddaughter, we are not persuaded that the challenged testimony would have had any impact upon the jury's assessment of Annie's credibility. Moreover, this testimony was but a small part of the overall case against Reed. Therefore, there is no reasonable possibility that the error, if any, in admitting Cecilia's statements contributed to the guilty verdict.
D. Post-conviction Motion for a New Trial
¶ 20 Next, Reed argues the circuit court erred when it denied his post-conviction motion for a new trial without conducting an evidentiary hearing. We are not persuaded. Reed sought a new trial on grounds he was denied the effective assistance of his trial counsel.
¶ 21 A defendant who alleges ineffective assistance of counsel is not automatically entitled to an evidentiary hearing. To obtain an evidentiary hearing, the defendant's motion must allege, with specificity, both that counsel provided deficient performance and that the deficiency was prejudicial. State v. Bentley , 201 Wis. 2d 303, 313-18, 548 N.W.2d 50 (1996). If the motion alleges facts that entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing. Id. at 310. Whether a motion alleges facts that, if true, would entitle a defendant to relief is a question of law that we review independently. Id.
¶ 22 However, if the factual allegations of the motion are insufficient or conclusory, or if the record irrefutably demonstrates that the defendant is not entitled to relief, the circuit court may, in its discretion, deny the motion without a hearing. Id. at 309-10. When reviewing a court's discretionary act, this court utilizes the deferential erroneous exercise of discretion standard. Id. at 310-11.
¶ 23 To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient, and that counsel's errors were prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. See id. at 697.
¶ 24 A defendant proves prejudice by demonstrating there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. However, "[a] defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." State v. Sholar , 2018 WI 53, ¶ 44, 381 Wis. 2d 560, 912 N.W.2d 89 (citing Strickland , 466 U.S. at 693 ). Thus, "a defendant need not prove the jury would have acquitted him [or her], but he [or she] must prove there is a reasonable probability it would have, absent the error." Id. , ¶ 46.
¶ 25 The question for this court on review is whether Reed's post-conviction motion was sufficient to entitle him to a hearing, so we review "only the allegations contained in the four corners of [the] post-conviction motion," not allegations in any brief. See State v. Allen , 2004 WI 106, ¶ 27, 274 Wis. 2d 568, 682 N.W.2d 433. Here, Reed's post-conviction motion alleged his trial counsel was ineffective by failing to present testimony or otherwise cross-examine Melanie about threats she allegedly made against Reed. In an affidavit attached to the post-conviction motion, Reed's brother, Paris, averred that "[d]uring the beginning of 2013," Melanie called him and was "very upset" that Reed's parents had filed taxes on his behalf "claiming 50% of a deduction" for Annie. According to Paris, Melanie stated that if she did not get her tax money she would "make sure that [Reed] does the max." The post-conviction motion stated that this conversation occurred while Reed was incarcerated for battering Annie, but before any charges of sexual assault were filed against Reed. Reed's implicit theory was that Melanie's threats established a motive to fabricate the sexual assault claims, and counsel's failure to present this motive prejudiced him at trial.
¶ 26 The circuit court properly determined that Reed's post-conviction motion did not allege sufficient facts that, if true, would entitle him to relief. As the circuit court recognized, at most, the lost tax money may have given Melanie a motive to ensure Reed received the maximum sentence in the battery case. It is, however, "absurd" to think that her alleged "threat" carried over to the sexual assault allegations not yet charged or that a reasonable jury would conclude Melanie was so upset about the tax returns that she fabricated the sexual assaults, perjured herself in testifying about them, and coached her daughter to disclose them to several people. It is equally absurd to believe that Melanie was able to convince her mother and brother to perjure themselves if they knew the sexual assault allegations were false and made in retaliation for lost tax money. Because Reed has not demonstrated a reasonable probability the jury would have acquitted him had Reed's counsel either called Paris to testify or cross-examined Melanie about the alleged threat, the circuit court properly denied the motion without a hearing.
E. New Trial in the Interest of Justice
¶ 27 Alternatively, Reed seeks a new trial under WIS. STAT. § 752.35, which permits us to grant relief if we are convinced "that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." Reed invokes the first basis for relief, that the real controversy was not fully tried. In order to establish that the real controversy has not been fully tried, Reed must convince us "that the jury was precluded from considering 'important testimony that bore on an important issue' or that certain evidence which was improperly received 'clouded a crucial issue' in the case." State v. Darcy N.K. , 218 Wis. 2d 640, 667, 581 N.W.2d 567 (Ct. App. 1998) (quoting State v. Hicks , 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996) ). An appellate court will exercise its discretion to grant a new trial in the interest of justice "only in exceptional cases." State v. McKellips , 2016 WI 51, ¶ 30, 369 Wis. 2d 437, 881 N.W.2d 258.
¶ 28 Reed argues that the real controversy has not been fully tried based on the errors alleged above. We have rejected Reed's various challenges to his conviction, and "[a]dding them together adds nothing. Zero plus zero equals zero." See Mentek v. State , 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976). Accordingly, we decline to exercise our discretionary authority under WIS. STAT. § 752.35 to grant Reed a new trial.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Honorable Timothy G. Dugan presided at trial and imposed the sentence. The Honorable Jeffrey A. Wagner reviewed and decided the post-conviction motion.

In compliance with Wis. Stat. Rule 809.86(4), we refer to the victims, including the child victim and her direct family members, other than Reed, by pseudonyms.

The transcript reflects that McFadden replied affirmatively when asked if she interviewed Annie in October 2011. It appears that either the prosecutor misspoke or there is a typographical error because the assaults had not occurred by October 2011 and the video of the interview is labeled October 18, 2013.