# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP267-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>   Plaintiff-Respondent-Petitioner,<br>  v.<br>Mitchell D. Green,<br>   Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 401 Wis. 2d 540, 974 N.W.2d 51
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 29, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 1, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | David L. Borowski |

JUSTICES:
REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, and KAROFSKY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET, J., joined. HAGEDORN, J., filed a dissenting opinion, in which DALLET, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *John A. Blimling,* assistant attorney general, with whom on the briefs was *Joshua L. Kaul,* attorney general. There was an oral argument by *John A. Blimling,* assistant attorney general.

For the defendant-appellant, there was a brief filed by *John T. Wasielewski* and *Wasielewski & Erickson,* Milwaukee. There was an oral argument by *John T. Wasielewski.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP267-CR
(L.C. No. 2019CF914)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent-Petitioner,

  v.

Mitchell D. Green,

    Defendant-Appellant.

**FILED**

**JUN 29, 2023**

Samuel A. Christensen
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, and KAROFSKY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET, J., joined. HAGEDORN, J., filed a dissenting opinion, in which DALLET, J., joined.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA GRASSL BRADLEY, J. The State charged Mitchell D. Green with trafficking of a child, a class C felony, among other offenses. See Wis. Stat. § 948.051(1) (2017–18).[1]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017–18 version unless otherwise indicated. Wisconsin Stat. § 948.051(1) provides: "Whoever knowingly recruits, entices, provides, obtains, harbors, transports, patronizes, or solicits or knowingly attempts to recruit, entice, provide, obtain, harbor, transport, patronize, or solicit any child for the purpose of commercial sex acts, as defined in s. 940.302 (1) (a), is guilty of a Class C felony."

At trial, the victim, S.A.B., testified that Green had driven her to a hotel in Milwaukee, where she was forced to engage in a sex act. After S.A.B. testified, Green called as a witness his cousin, Jonathon Cousin, who testified that he, not Green, had driven S.A.B. and another man, J.R., to the hotel.

¶2 After a recess for lunch, the trial court held a hearing to address the State's concerns regarding Cousin's testimony. Specifically, the State argued that Green presented a third-party perpetrator defense through Cousin's testimony, without notifying the State or seeking a ruling from the court regarding the admissibility of that evidence under State v. Denny, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984) (conditioning admissibility of third-party perpetrator evidence on a showing of a motive, opportunity, and direct connection between the third party and the crime charged). Green denied offering Cousin's testimony for that purpose. The court concluded Cousin's testimony was Denny evidence and therefore should not have been presented to the jury without the defense notifying the State in advance and the court ruling on its admissibility. Because the jury heard that evidence without either precondition being satisfied, the court determined a mistrial was necessary.

¶3 Green filed a motion to dismiss the case with prejudice, arguing retrial would violate his right against double jeopardy under the Fifth Amendment to the United States Constitution as incorporated against the States by the Fourteenth Amendment. After the trial court denied Green's

2

motion, Green filed a motion for reconsideration, which the court also denied. Green appealed, and the court of appeals reversed. State v. Green, No. 2021AP267-CR, unpublished slip op. (Wis. Ct. App. March 22, 2022).

¶4 Before this court, the State argues retrial would not violate Green's right against double jeopardy because the trial court exercised sound discretion in deciding manifest necessity justified a mistrial. We agree; accordingly, we reverse the decision of the court of appeals.

## I. BACKGROUND

¶5 Prior to trial, Green filed a witness list naming Cousin. Green's counsel had a written statement from Cousin, but the State did not demand its production. In August 2019, the State filed pretrial motions in limine, asking the circuit court to prohibit Green "from introducing any other-acts evidence involving a third-party perpetrator, unless and until defendant satisfies his burden and such evidence is ruled admissible by the court[.]" Green did not object to the State's motions. At a final pretrial hearing, the court acknowledged the "State had filed their motion in limine[.]" Milwaukee Circuit Court Judge Janet Protasiewicz presided over the case until the day of trial. Nothing in the record indicates the court ruled on the State's motion in limine before the trial scheduled to commence on January 27, 2020.

3

¶6 On the day of trial, Judge Protasiewicz spun[2] the case to Judge David Borowski. Three witnesses testified: S.A.B.; Gerardo Orozco, a Milwaukee police officer; and Cousin. S.A.B. was the prosecution's first witness. S.A.B. testified she "was sex trafficked" between October 30, 2018 and December 4, 2018. S.A.B. explained that she was forced to be part of a sex trafficking ring and that Green——who S.A.B. knew as Money Mitch——was integral to the operation.

¶7 S.A.B. testified specifically to Green's involvement in one trafficking incident alleged to have occurred during the fall of 2018: "I got a call. It was a date. Money Mitch was at JR's house, and I told JR that I had a date. Money Mitch was like, well, I got a car. I can drive you. I said okay." After that conversation, S.A.B. testified that Green picked her up and drove her to a hotel in Milwaukee. S.A.B. recounted further details from the night, testifying she "remember[ed] the date because the guy spit in my mouth and I didn't appreciate that, so I made him give me more money, and then when I went downstairs I gave Money Mitch all the money."

¶8 After Officer Orozco testified, Green called his first witness, Cousin, who testified Green had "nothing to do with"

---

[2] Courts commonly stack cases for trial on the same day with the expectation that parties will reach a plea agreement on the scheduled trial date. When more than one case will proceed to trial on the same day, the assigned judge will ask another judge to preside over one of the trials to avoid delaying resolution of the case. As in this case, the practice is referred to as "spinning."

4

the events S.A.B. described; according to Cousin, he and not Green had driven S.A.B. that night. Cousin testified that one night in 2018, "I think October," a family member named Delmar called Cousin to ask for a ride home. Cousin agreed to drive Delmar home, provided Delmar paid him for gas. When Cousin arrived, Delmar approached the car alone. Sitting in Cousin's passenger seat, Delmar asked if two more people could ride with them. Cousin agreed, "as long as I get my gas money." Cousin denied knowing either S.A.B. or J.R.

¶9 With three passengers in Cousin's car, Cousin asked Delmar where to take them. According to Cousin, Delmar told him "just drop us off downtown[.]" Cousin testified "they didn't tell me an exact destination. They just said downtown, and that actually made me mad. I'm like well where are we going." Because "they didn't tell me where they were going, I stopped in front of the blue building." S.A.B. and J.R. exited the car, but Delmar stayed in the car with Cousin and asked him to remain parked until the two returned. Cousin agreed after Delmar offered to give him more gas money.

¶10 According to Cousin, S.A.B. and J.R. returned to the car no more than fifteen minutes later. While driving, Cousin heard S.A.B. and J.R. conversing in the backseat "about a story that happened[.]" Cousin heard S.A.B. say: "the guy asked me to ask if he can spit in my mouth, . . . it's disgusting, I let him do it, I threw up." After hearing this exchange, Cousin "turned up [his] radio" because he did not "know what[] [was] happening in that back seat."

5

¶11 The State did not object to Cousin's testimony on direct examination. During cross-examination, when the State asked Cousin about driving "a sex worker who is underage to a hotel," Cousin replied he "had no recognition of what was going on that night, so I was just doing it for the gas money." At the conclusion of Cousin's testimony, the trial court recessed for lunch.

¶12 The trial court met in chambers with each party's counsel, as well as an attorney from the state public defender's office whom the court asked to advocate on Cousin's behalf. After an off-the-record discussion, the court recalled the case to conduct a hearing on the record regarding the State's concerns about Cousin's testimony. At the outset, the court expressed concerns about Cousin's testimony, in which "arguably" Cousin "said that he rather than the defendant committed the child trafficking" although the court acknowledged "that's open to interpretation, and technically [Cousin] denied that[.]" In the court's view, Cousin may have incriminated himself without counsel, and Green may have violated Denny by presenting Cousin's testimony without notifying the State in advance or seeking a ruling on its admissibility.

¶13 The trial court ultimately concluded Cousin's testimony was "clearly" Denny evidence. The court characterized Cousin's written statement as "literally . . . taking the fall for . . . Green." Reading from Cousin's statement, the court noted Cousin said, "JR asked me if I was giving [sic] money would I give them a ride. Them being both of them, the pimp and

6

the alleged prostitute." Green's counsel argued "it never was my intent to accuse a known third party who had motive and opportunity of the crime that . . . Green is charged with." The court responded, "if he's not being called for that reason, counsel, why is he being called? . . . [T]hat would be completely irrelevant." Addressing Green's counsel, the court said "[i]t is Denny evidence clearly. You're offering him only to get your client off." Although Green's counsel argued Cousin "didn't incriminate himself" the court noted that Cousin "admitted to every single element of the crime other than saying, yeah, I knew it was a prostitute[.]" In the court's view, "the State has enough to arguably get past probable cause right now based on what [Cousin] said on the stand."

¶14 The trial court allowed each party to recommend how to proceed, noting "I don't know how I could possibly unring the bell. . . . I would have to tell [the jury] to disregard all that testimony completely." The State argued the solution was best left to the "sound discretion" of the court, while defense counsel argued Cousin's testimony reflected he "provide[d] a perfectly legal ride in exchange for gas money," which was not Denny evidence; accordingly, "I don't think it's anything to fix. [Cousin's] testimony is what it is, it's relevant, and the jury should be allowed to weigh it."

¶15 After summarizing Cousin's testimony, the trial court concluded it was "impossible to unring that bell." It reasoned:

> I don't think there's any way that that bell can be unrung, because of the gravity of the testimony,

7

because of Denny evidence, because there were only three witnesses in this case, and clearly at this point in time only will be three witnesses, the victim——or alleged victim——[S.A.B], the officer, and . . . Cousin.

And as the State said, the timing of the evidence was——happened to be right before lunch, the jury's now had two hours to think about that evidence, and all of them, I hope they're following my rules and are not discussing the case. I'm sure they're not, but they're all probably thinking in their head, holy cow, that testimony . . . Cousin just gave, that's——they're thinking one of two things, either, well, . . . Green is clearly innocent based on that testimony, or they're thinking, that's utter garbage that . . . Green got his cousin to cover for him and take the fall.

¶16 Consequently, the trial court ordered a mistrial. "[I]f it's a Denny issue," the court reasoned, "it needed to be vetted before trial." It continued:

I would have handled this differently if this had come up at 11:00 rather than at 1:30 or 2:00. I would have had the witness speak to an attorney, first of all. I think he probably would not have testified . . . . And more importantly, it's clearly Denny evidence that the State has the right to know about and the State has a right to respond to, and the court has a right to know about, and the court is required to make a ruling on before it comes out of a witness's mouth during the middle of the trial.

¶17 After the court ordered a mistrial, Green filed a motion to dismiss the case, arguing a retrial would violate his Fifth Amendment right against double jeopardy. The circuit court denied Green's motion, as well as his reconsideration motion, and the court of appeals granted leave for an interlocutory appeal.

8

¶18 The court of appeals reversed on four grounds. Green, No. 2021AP267-CR. First, the trial court never held a hearing on whether Cousin's testimony was admissible. Id., ¶18. Second, the trial court later concluded Cousin's testimony was, in fact, admissible. Id., ¶19. Third, the testimony was not unfair to the State because the State had the opportunity to investigate Cousin before trial and to demand production of his statement but did not do so. Id., ¶20. Fourth, even if Cousin's right to counsel was violated, any remedy would go to Cousin, not the State. Id., ¶23.

## II.  STANDARD OF REVIEW

¶19 In this case, we must determine whether the trial court erred in finding manifest necessity for a mistrial, in light of the Green's Fifth Amendment protection from double jeopardy. State v. Seefeldt, 2003 WI 47, ¶13, 261 Wis. 2d 383, 661 N.W.2d 822. In Illinois v. Somerville, 410 U.S. 458, 461 (1973), the United States Supreme Court applied United States v. Perez, 9 Wheat. 579 (1824), "the fountainhead decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial[.]" In Perez, Justice Joseph Story, on behalf of the Court, formulated the "manifest necessity" standard for ensuring retrials do not violate the defendant's right against double jeopardy, which is dependent upon the trial court exercising "sound discretion" in declaring a mistrial:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into

9

consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges under their oaths of office.

22 U.S. (9 Wheat.) at 580.

¶20 "A circuit court's exercise of discretion in ordering a mistrial is accorded a level of deference that varies depending on the particular facts of the case." Seefeldt, 261 Wis. 2d 383, ¶13 (citing State v. Barthels, 174 Wis. 2d 173, 184, 495 N.W.2d 341 (1993)). A rigid rule would not take into account "all the circumstances" in which manifest necessity may arise. Perez, 22 U.S. (9 Wheat.) at 580. The level of deference accorded to these judgments therefore exists on a spectrum. Seefeldt, 261 Wis. 2d 383, ¶25.

¶21 On one end, appellate courts give "great deference" to circuit courts' judgments when "the jury is hopelessly deadlocked." Wayne R. LaFave et al., Manifest necessity and trial court discretion, 6 Crim. Proc. § 25.2(e) (4th ed. updated Nov. 2022). In this scenario, "the trial judge is best able to assess the risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." Seefeldt, 261 Wis. 2d 383, ¶26 (citing Arizona v. Washington, 434 U.S. 497, 509 (1978)). On the other end of

10

the spectrum, appellate courts apply "the strictest scrutiny" to a trial court's mistrial order when "critical prosecution evidence" is unavailable or when "there is reason to believe that the prosecutor is using the State's superior resources to harass the defendant or to achieve a tactical advantage." Id., ¶25 (citing Washington, 434 U.S. at 508).

¶22 The application of deference does not end the appellate inquiry. Renico v. Lett, 559 U.S. 766, 775 (2010). The trial court must weigh the decision to declare a mistrial by also considering the defendant's interest in having the case concluded before the jury called to decide it. Washington, 434 U.S. at 514 (quoting United States v. Jorn, 400 U.S. 470, 486 (1971) (plurality)). "In order to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of . . . Justice Story, the trial judge exercised 'sound discretion' in declaring a mistrial." Id. "Perez itself noted that the judge's exercise of discretion must be 'sound'" to justify a retrial. Renico, 559 U.S. at 775 (quoting Perez, 9 Wheat. at 580). In Washington, the United States Supreme Court explained: "[i]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears." 434 U.S. at 510 n.28. "Sound discretion means acting in a rational and responsible manner." Seefeldt, 261 Wis. 2d 383, ¶36; see also Washington, 434 U.S. at 514 ("[I]f a trial judge acts

11

irrationally or irresponsibly, his action cannot be condoned." (citations omitted)).

¶23 "The prohibition against retrial is not a mechanical rule to be applied to prevent any second trial after the first trial is terminated prior to judgment." Seefeldt 261 Wis. 2d 383, ¶18 (citing Somerville, 410 U.S. at 462). A retrial is permissible "whenever, in [the circuit court's] opinion, taking all the circumstances into consideration, there is a manifest necessity" supporting a mistrial. Perez, 22 U.S. at 580. "Manifest necessity" refers not to absolute necessity but to a "high degree" of necessity. Washington, 434 U.S. at 506; Seefeldt, 261 Wis. 2d 383, ¶19 (citing Washington, 434 U.S. at 505; Barthels, 174 Wis. 2d at 183).

¶24 A trial court exercises sound discretion in deciding manifest necessity justifies a mistrial provided the court:

- gives "both parties a full opportunity to explain their positions and consider[s] alternatives such as a curative instruction or sanctioning counsel." State v. Moeck, 2005 WI 57, ¶43, 280 Wis. 2d 277, 695 N.W.2d 783;

- "accord[s] careful consideration to [defendant]'s interest in having the trial concluded in a single proceeding." Washington, 434 U.S. at 516; and

- "ensure[s] that the record reflects that there is an adequate basis for a finding of manifest necessity." Moeck, 280 Wis. 2d 277, ¶43.

A court does not exercise sound discretion if "the . . . court fails to consider the facts of record under relevant law, bases

12

its conclusion on an error of law or does not reason its way to a rational conclusion." Id. (quoting Seefeldt, 261 Wis. 2d 383, ¶36).

## III. DISCUSSION

### A. Double Jeopardy Principles

¶25 The right against double jeopardy has been characterized as a "universal maxim" of a fair justice system. See State v. Schultz, 2020 WI 24, ¶19, 390 Wis. 2d 570, 939 N.W.2d 524 (quoting 4 William Blackstone, Commentaries *335). It is protected by the Fifth Amendment, which provides, in relevant part: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" Jeopardy attaches "in a jury trial when the selection of the jury has been completed and the jury is sworn." Seefeldt, 261 Wis. 2d 383, ¶16 (citing State v. Comstock, 168 Wis. 2d 915, 937, 485 N.W.2d 354 (1992)).

¶26 "[T]here was a time when English judges served the . . . monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict," and "the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this 'abhorrent' practice." Washington, 434 U.S. at 507-08. As the United States Supreme Court has explained:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be

13

convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

Id. at 503-05 (citations omitted); see also Seefeldt, 261 Wis. 2d 383, ¶17. Provided the trial court exercises sound discretion, retrial after declaring a mistrial based on manifest necessity will not violate the defendant's double jeopardy right.

### B. The Trial Court Exercised Sound Discretion in Ordering a Mistrial.

¶27 We need not pinpoint where this case falls on the spectrum of deference to be accorded the trial court's conclusion that manifest necessity existed. Applying even a strict scrutiny, we conclude the record demonstrates the trial court exercised sound discretion in declaring a mistrial based on manifest necessity. The court ordered a mistrial because "the State has the right to know about and . . . respond to" testimony implicating a third-party perpetrator "and the court is required to make a ruling on it before it comes out of a witness' mouth during the middle of the trial." At the time the court ordered a mistrial, Green did not dispute advance notice of such Denny evidence was required. Rather than informing the court that no rule or order barred the introduction of Denny evidence, defense counsel maintained Cousin's testimony was not Denny evidence at all. Under those circumstances, it was reasonable for the trial court to believe a pretrial order had been violated. All factors established under precedent support

14

the trial court's discretionary decision. We address them in turn.

¶28 First, the record demonstrates the trial court gave "both parties a full opportunity to explain their positions and consider[ed] alternatives such as a curative instruction or sanctioning counsel." Moeck, 280 Wis. 2d 277, ¶43 (citing Seefeldt, 261 Wis. 2d 383, ¶36). During the lunch recess, the court conferred in chambers with Green's counsel and the prosecutor to discuss the issues presented by Cousin's surprise testimony. The court then conducted a hearing to address the State's concerns.

¶29 After hearing from both parties, the trial court identified alternatives to mistrial. Although the court explicitly considered issuing a curative instruction or striking Cousin's testimony, it explained why those remedies could not "unring the bell":

> I don't know how I could possibly unring the bell. I can give them——I would have to tell them to disregard all that testimony completely. Because there was nothing in there that wasn't Denny evidence. There was nothing in there that didn't put him in the place of . . . Green on the day in question.
>
> . . . .
>
> Candidly it's impossible to unring that bell. I would have to tell the jury to completely ignore . . . 25 minutes of pretty compelling testimony where . . . Cousin literally tries to take the fall for his cousin. . . . That would be impossible.
>
> . . . .
>
> And most importantly, I don't think there's any way that that bell can be unrung, because of the gravity

15

> of the testimony, because of Denny evidence, because there were only three witnesses in this case, and clearly at this point in time only will be three witnesses, the victim——or alleged victim——[S.A.B.], the officer, and . . . Cousin.

The record establishes the court carefully considered the options for remedying the introduction of Denny evidence without advance notice to the State or the court first ruling on its admissibility. The court declared a mistrial only after hearing arguments of counsel and contemplating alternatives. Given the gravity and timing of Cousin's testimony, the court concluded those remedies were inadequate.

¶30 Next, the trial court "accorded careful consideration to [Green]'s interest in having the trial concluded in a single proceeding." Washington, 434 U.S. at 516. The court did not confine its analysis to Denny alone; it also acknowledged each party's right to a fair trial:

> [B]oth sides have a right to a fair trial issue, and I think the State's basically saying they're literally caught by surprise with this testimony and the Denny aspect of it, which does change trial strategy potentially . . . .
>
> It would also be unfair to the State. Both sides have a right to a fair trial. The defendant, . . . Green, has a right to a fair trial, and the State also has a right to a fair trial.

With each party's fair trial rights in mind, the court explained at length its decision to order a mistrial and why it rejected a curative instruction as insufficient.

¶31 The record also "reflects that there is an adequate basis for a finding of manifest necessity" to order a mistrial. Moeck, 280 Wis. 2d 277, ¶43. As the trial court emphasized,

16

Cousin finished testifying "immediately before lunch." The court considered the timing of Cousin's testimony to be impactful:

> [T]he timing of the evidence was——happened to be right before lunch, the jury's now had two hours to think about that evidence, and all of them, I hope they're following my rules and are not discussing the case. I'm sure they're not, but they're all probably thinking in their head, holy cow, that testimony . . . Cousin just gave, that's——they're thinking one of two things, either, well, . . . Green is clearly innocent based on that testimony, or they're thinking, that's utter garbage that . . . Green got his cousin to cover for him and take the fall.

The court determined a mistrial was manifestly necessary because the testimony and its timing precluded the effectiveness of a curative jury instruction. In the court's estimation, the prolonged break immediately following Cousin's testimony unavoidably altered the jurors' take on the case and prejudiced the State. The court observed the jurors as Cousin delivered what the court deemed "pretty compelling" testimony. Appellate courts cannot weigh the credibility of a witness much less observe or gauge the jury's reaction to his testimony. Only the trial court could assess the effect of the testimony on the jury. In this case, the record reflects an adequate basis for a finding of manifest necessity to order a mistrial.

¶32 Lastly, the trial court considered the relevant facts, based its conclusion on applicable law, and reasoned its way to a rational conclusion. See id. After hearing each party's arguments, the court concluded Cousin's testimony was "clearly"

17

_Denny_ evidence because the defense offered third-party testimony to absolve Green of any wrongdoing. The record shows the court's consideration of _Denny_ and its applicability, acknowledging factual nuances possibly distinguishing this case from _Denny_:

> [_Denny_] certainly is a different situation. That was a homicide case and the presentation of how that issue arose was different than this case. But Denny discusses motive and opportunity and presenting basically a——to the jury a plausible alternative—— that's my language——as to who committed a crime, or a plausible theory of another person that committed a crime.

The court proceeded to summarize Cousin's testimony in detail, concluding its "only purpose" was "to take the fall for . . . Green[.]" Before ultimately classifying Cousin's testimony as within _Denny_'s scope, the court emphasized "I would have needed [Cousin's testimony] to be vetted [a] bit more. I would have wanted to hear more of an argument and briefing from both sides as to the Denny issues. It strikes me as very, very problematic[.]" The court also noted it "is required to make a ruling" on such evidence "before it comes out of a witness's mouth during the middle of the trial."

¶33 Green principally argues the trial court based its decision to order a mistrial on an error of law. Green emphasizes the court "later determined that _Denny_ did not preclude this evidence. . . . If . . . Green were to be retried, a second jury could hear this same testimony. Thus, there was, in fact, no need to 'unring the bell.'"

18

¶34 The court's later determination on Denny is irrelevant.  On review, we consider whether the court exercised sound discretion.  At the time the court declared a mistrial, the court believed the effect on the jury of introducing unnoticed Denny testimony could not be remedied by a jury instruction.  The court demonstrated a reasoning process grounded in the law.[3]

¶35 Adopting "mechanical rules," such as requiring a circuit court to halt a criminal jury trial and hold a full evidentiary hearing on the admissibility of evidence the trial court determined should have been considered before the trial commenced, would be inconsistent with precedent.  The United States Supreme Court has recognized that the application of governing principles "to any particular set of facts" in deciding whether to order a mistrial "entails an element of judgment."  See Renico, 559 U.S. at 785.  Although the circuit court may have later determined Cousin's testimony was in fact admissible, the court nonetheless grounded its mistrial order in the law, as applied to the particular facts of the case.

---

[3] Justice Brian Hagedorn claims the trial court "fail[ed] to consider whether this evidence was admissible as an alternative to ordering a mistrial[.]"  Justice Hagedorn's dissent, ¶75. This statement oversimplifies the issue and does not apply the legal test established in Perez, which requires "taking all the circumstances into consideration" rather than hyper-focusing on just one.  22 U.S. (9 Wheat.) 579, 580 (1824).  The trial court considered competing arguments regarding whether the testimony was Denny evidence.  It then reasoned the Denny issue needed to be vetted ahead of time because the prejudice of "surprise" was too great.  See Justice Hagedorn's dissent, ¶74.

19

¶36 Although this court in Seefeldt decided the trial court erred in granting a mistrial in part because the trial court had not assessed the admissibility of a witness' warrants, 261 Wis. 2d 383, ¶38, that type of evidence differs materially from the Denny evidence introduced at trial in this case. As the State argues, determining the admissibility of Denny evidence could require an evidentiary hearing involving testimony from other witnesses. Additionally, the trial court said, "I would have wanted to hear more of an argument and briefing from both sides as to the Denny issues." Significantly, Seefeldt's holding was also based on the trial court's failure to (1) afford the parties sufficient opportunity to argue their positions; (2) take adequate time to consider the parties' arguments; and (3) consider alternatives to mistrial. Id. Collectively, those failures fell short of showing an adequate basis for a finding of manifest necessity for a mistrial. Id. None of those failures are present in this case. Seefeldt did not impose a rigid rule conditioning the propriety of a mistrial on a threshold determination of admissibility of the evidence triggering the order. Appellate courts must apply a "flexible standard," under which they "take 'all circumstances into account.'" Somerville, 410 U.S. at 462 (quoting Wade v. Hunter, 336 U.S. 684, 691 (1949)).

¶37 After the trial court ordered a mistrial, Green filed a motion to dismiss on double jeopardy grounds, which the court denied. Green filed a motion for reconsideration, arguing that the State was not entitled to prior notice of the substance of

20

Cousin's testimony absent any demand for discovery by the State or an applicable order in limine. The trial court declined to reconsider its denial of Green's motion to dismiss, describing a "culture" in the Milwaukee County court system of parties not filing discovery demands and a common understanding among counsel that certain types of evidence will be disclosed before trial regardless.

¶38 Green contends the State's pretrial motion in limine was not operative because, so far as the record shows, the pretrial court never ruled on the motion. This fact is also irrelevant. The trial judge rotated onto this case the morning of trial, which was more than ninety days since the state filed the motion in limine. Supreme Court Rule 70.36[4] requires judges to rule on all motions within ninety days of receiving them. Under those circumstances, and with neither party requesting a ruling on any pending motions, it was not unreasonable for Judge Borowski to presume Judge Protasiewicz had granted the motion——and that Green was prohibited from springing on the State an

---

[4] SCR 70.36(1)(a) provides:

Every judge of a circuit court shall decide each matter submitted for decision within 90 days of the date on which the matter is submitted to the judge in final form, exclusive of the time the judge has been actually disabled by sickness. If a judge is unable to do so, within 5 days of the expiration of the 90-day period the judge shall so certify in the record of the matter and notify in writing the chief judge of the judicial administrative district in which the matter is pending, and the period is thereupon extended for one additional period of 90 days. This subsection applies to an assigned reserve judge.

21

alternative perpetrator of the crime. The trial court noted that defense counsel "darn well knows that you can't spring a witness on the State, especially a witness of this nature."

¶39 Green also contends Denny does not mandate advance notice to the State; therefore, he argues the trial court erred in concluding Green should have apprised the State of the substance of Cousin's testimony before the trial. As the court explained during the hearing on Green's motion for reconsideration, however, the parties seemed to be operating under the same understanding that is commonly shared among attorneys practicing in the criminal court system in Milwaukee: "I've seen similar situations, but even on my 17 years on the bench, it's very, very rare that you have a situation like this blow up in the middle of trial." Customarily, the court noted, parties disclose all evidence before the trial commences:

> You know all of us know that the movie My Cousin Vinny was funny because of how ridiculous it was, and there's a point in there where the lead actor, the defense attorney, is like shocked that the State gave him all the evidence. Well, right, because that's how it works.

Although in retrospect it is clear the State never made a discovery demand for Cousin's statement and the pretrial court never ruled on the State's pretrial motions in limine, the record shows defense counsel understood there were some constraints on the introduction of Denny evidence. Instead of arguing the absence of any rule or order prohibiting him from introducing Denny evidence, defense counsel maintained Cousin's testimony was not Denny evidence at all. Based on this record,

22

it was neither irrational nor irresponsible for the trial court to believe a pretrial order had been violated, particularly when defense counsel did not disabuse the court of that notion.[5]

¶40 Green suggests the availability of retrials is limited to only certain categories of errors. In his response brief, Green surveys a number of double jeopardy cases in which mistrials were granted without the defendants' consent based on defense counsel misconduct, concluding:

> A review [of] these cases supports the generalization that retrial is allowed only in circumstances where either defense counsel's misconduct tainted the jury by introducing evidence which the jury never should have heard, e.g., Washington; or, the misconduct necessitated counsel being a witness, e.g., Fosse

---

[5] Justice Ann Walsh Bradley's dissent says this court "allows the trial court to simply assume that a motion in limine had been granted when the record contains no order or indication that that is actually the case." Justice Ann Walsh Bradley's dissent, ¶56. Not so. The standard of review limits this court to determining whether the trial court soundly exercised its discretion, which "means acting in a rational and responsible manner." State v. Seefeldt, 2003 WI 47, ¶36, 261 Wis. 2d 383, 661 N.W.2d 822. Under the particular circumstances of this case, it was neither irrational nor irresponsible for the trial judge, to whom the case was spun the morning of trial, to presume pretrial orders prohibited Green from introducing unnoticed testimony incriminating an alternative perpetrator of the crime, particularly when defense counsel did not correct the court's presumption. Justice Ann Walsh Bradley also says the court "lends its imprimatur to the trial court's treatment of the State's motion in limine" and then accuses the court of "not say[ing] on what basis a trial court can simply presume a motion has been granted." Justice Ann Walsh Bradley's dissent, ¶¶64, 66. Of course, neither of Justice Ann Walsh Bradley's assertions is true. We simply determine the trial court's presumption was neither irrational nor unreasonable under the circumstances surrounding the trial court's sound exercise of its discretion, which we have explained in this opinion in great detail.

23

(defense counsel became witness); Duckett (prosecutor became witness).

Whatever patterns Green may observe, mistrials arise in a multitude of situations and retrials are not restricted to particular case scenarios. See, e.g., State v. Russo, 70 Wis. 2d 169, 171, 233 N.W.2d 485 (1975) (Double Jeopardy Clause did not bar retrial of action dismissed after bench trial for lack of jurisdiction because of defective information); State v. Smith, 244 A.3d 296 (N.J. Super. Ct. App. Div. 2020) (mistrial ordered due to the onset of the COVID-19 pandemic); United States v. Garske, 939 F.3d 321 (1st Cir. 2019) (mistrial ordered because a juror went missing); State v. Porter, 179 A.3d 1218, 1229 (R.I. 2018) (mistrial ordered because a spectator yelled "How's that?" during defense's opening argument); Fields v. State, 626 A.2d 1037, 1043 (Md. Ct. Spec. App. 1993) (mistrial ordered because "a regrettable disagreement between the judge and the prosecutor steadily escalated into an angry argument and ultimately degenerated into a veritable shouting match of mutual insults and displays of uncontrolled temper").

¶41 Most mistrial cases "escape meaningful categorization[.]" Somerville, 410 U.S. at 464. Because some reasons for mistrials dwell in those "secluded but exotic corner[s] of the double jeopardy garden," courts have declined to adopt categorical rules defining manifest necessity. Fields, 626 A.2d at 1038 (quoting West v. State, 52 Md. App. 624, 625, 451 A.2d 1228 (1982)); Jorn, 400 U.S. at 480 ("[T]his Court has, for the most part, explicitly declined the invitation of

24

litigants to formulate rules based on categories of circumstances which will permit or preclude retrial."). Flexible rules ensure reviewing courts do not impede circuit courts' duty to protect "the integrity of the trial." Washington, 434 U.S. at 513.  As the COVID-19 pandemic made clear, a mistrial may be manifestly necessary in "varying and often unique situations arising during the course of a criminal trial."  See Somerville, 410 U.S. at 462.  We therefore decline to adopt any categorical rules governing the permissibility of retrials.

## IV.  CONCLUSION

¶42 A thorough review of the record reveals the court exercised sound discretion in ordering a mistrial based on manifest necessity.  The court responsibly and deliberately considered the impact on the jury of third-party perpetrator evidence, which the defense introduced without the court first ruling on its admissibility.  The court gave both parties a full opportunity to argue their positions, and took account of their respective fair trial rights.  Additionally, the court weighed alternatives to a mistrial, including a curative instruction or striking Cousin's testimony.  After considering the facts of record under relevant law, the court reasoned its way to a rational conclusion.  Although a different judge may have handled the matter differently, the standard of appellate review compels upholding the trial court's sound exercise of discretion.  Accordingly, retrial will not violate Green's Fifth Amendment right against double jeopardy.

25

*By the Court*.—The decision of the court of appeals is *reversed*.

¶43 ANN WALSH BRADLEY, J. *(dissenting).* The circuit court declared a mistrial after Jonathan Cousin testified that he, and not Mitchell Green, drove the victim to a hotel where she was forced to perform a sex act. In the circuit court's view, this evidence was potentially inadmissible <u>Denny</u>[1] evidence that should not have been presented to the jury without prior vetting by the court.

¶44 The circuit court stated that it was "impossible to unring that bell," necessitating a mistrial. Majority op., ¶15. But ultimately, Cousin's testimony was found to be admissible in any future trial. In other words, there was no need to "unring" any bells. Still, the majority somehow concludes that the trial court exercised sound discretion when it declared a mistrial.

¶45 The majority's reasoning is a headscratcher. First, it upholds the circuit court's declaration of a mistrial after the jury heard <u>admissible</u> evidence. But how can hearing 25 minutes of unobjected-to admissible evidence justify a mistrial?

¶46 And if that isn't perplexing enough, it then proceeds to err by reading into the record an order that the trial court never made. Specifically, it premises its determination in part

---

[1] <u>State v. Denny</u>, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984). "<u>Denny</u> 'created a bright line standard requiring that three factors be present' for admissibility of evidence that an alleged third-party perpetrator committed the crime." <u>State v. Griffin</u>, 2019 WI App 49, ¶7, 388 Wis. 2d 581, 933 N.W.2d 681. Namely, the defendant must demonstrate a "legitimate tendency" that the third party committed the crime, that is, that the third party had motive, opportunity, and a direct connection to the crime. <u>Id.</u>, ¶7.

1

on a motion in limine that, the record reflects, had not been ruled upon. Yet the majority, without citing any authority, forgives this gap in the record with the unwarranted leap that "it was not unreasonable for Judge Borowski to presume Judge Protasiewicz had granted the motion." Id., ¶38.

¶47 The majority's hard-to-square conclusions expose Green to double jeopardy,[2] subjecting him to a second trial where the evidence presented will presumably be identical to that presented in the first. Its proffered reasoning should cause the reader to pause and ponder how this can be so. Because it certainly causes me to pause, I respectfully dissent.

I

¶48 Green was charged with trafficking a child,[3] among other offenses. In advance of trial, Green filed a witness list, which contained the name Jonathan Cousin. Majority op., ¶5. Although Green possessed a written statement from Cousin, the State did not demand that it be produced. Id.

¶49 For its part, the State filed motions in limine prior to trial. One of those motions sought a ruling as follows:

> Prohibiting the defense from introducing any other-acts evidence involving a third-party perpetrator, unless and until defendant satisfies his burden and such evidence is ruled admissible by the court pursuant to State v. Scheidell, 227 Wis. 2d 285, 595 N.W.2d 661 (1999), State v. Sullivan, 216 Wis. 2d 768, 576 N.W.[2d] 30 (1998) and § 904.04(2) Stats.

---

[2] See U.S. Const. amend. V.

[3] Wis. Stat. § 948.051(1).

2

Nothing in the record indicates that the circuit court ever ruled on this motion before the trial began.

¶50 At trial, Cousin took the stand and testified that it was he, and not Green, who drove the victim to a hotel where she was forced to engage in a sex act. Cousin claimed that he had no knowledge regarding the purpose of the excursion, and that he was "just doing it for the gas money." Majority op., ¶11. The State did not object to Cousin's testimony as it occurred, and proceeded to cross-examine him.

¶51 After Cousin's testimony concluded, the court recessed for lunch and met in chambers with counsel for Green and the State, as well as an attorney the court asked to advocate for Cousin. Id., ¶12. The court indicated its concern that "Cousin may have incriminated himself without counsel, and Green may have violated Denny by presenting Cousin's testimony without notifying the State in advance or seeking a ruling on its admissibility." Id.

¶52 Ultimately, the circuit court determined that Cousin's testimony was "clearly Denny evidence," as the testimony presented someone else "taking the fall" for Green. Id., ¶13. It rejected Green's argument that there wasn't "anything to fix" and then turned to the question of remedy. In the circuit court's estimation, it was "impossible to unring that bell" that resulted from Cousin's testimony. Id., ¶15. Accordingly, it ordered a mistrial because it determined that Cousin's testimony should not have been heard by the jury and that "it needed to be vetted before trial." Id., ¶16.

3

¶53 Green subsequently moved to dismiss the case, arguing that any retrial would violate his Fifth Amendment right against double jeopardy. The circuit court disagreed and denied the motion, and Green sought leave to file an interlocutory appeal, which the court of appeals granted.

¶54 The court of appeals reversed, disagreeing with the circuit court on four points. It determined:

- The circuit court erred by failing to determine whether Cousin's testimony was admissible before declaring a mistrial. State v. Green, No. 2021AP267-CR, unpublished slip op., ¶18 (Wis. Ct. App. Mar. 22, 2022).

- At a later hearing, the circuit court determined that Cousin's testimony was admissible under Denny, so there was no need to "unring the bell" after Cousin testified. Id., ¶19.

- The State had an opportunity to investigate Cousin prior to trial and did not avail itself of that opportunity. Cousin was on Green's witness list five months before trial, and the State did not make any discovery demand. Id., ¶20. Relatedly, the motion in limine did not prohibit Cousin's testimony because it referenced only unknown-party and other-acts evidence, not known-party. Id., ¶22.

- The question of whether Cousin should have had counsel before his testimony did not create a manifest necessity for a mistrial because any remedy for a

4

violation of Cousin's right to counsel would flow to Cousin, not to Green. Id., ¶23. Ultimately, a unanimous court of appeals concluded that "there was not a manifest necessity justifying a mistrial, and that a new trial would violate Green's constitutional right against double jeopardy." Id., ¶25.

¶55 The majority now reverses the court of appeals, determining that the circuit court "exercised sound discretion in ordering a mistrial based on manifest necessity." Majority op., ¶42.

II

¶56 The root of the majority's error boils down to two main missteps. First, the majority discounts the clearly relevant fact that that Cousin's testimony was ultimately deemed to be admissible. And second, without providing authority for doing so, it allows the trial court to simply assume that a motion in limine had been granted when the record contains no order or indication that that is actually the case. I will address each of these errors in turn.

A

¶57 A motion for mistrial is committed to the sound discretion of the circuit court and is reviewed for an erroneous exercise of discretion. State v. Ford, 2007 WI 138, ¶28, 306 Wis. 2d 1, 742 N.W.2d 61. This standard is admittedly deferential to the circuit court. See State v. LaCount, 2008 WI 59, ¶15, 310 Wis. 2d 85, 750 N.W.2d 780.

5

¶58 Nevertheless, a mistrial is a drastic remedy that must be supported by "manifest necessity." "[G]iven the importance of the constitutional protection against double jeopardy, the State bears the burden of demonstrating a 'manifest necessity' for any mistrial ordered over the objection of the defendant." State v. Seefeldt, 2003 WI 47, ¶19, 261 Wis. 2d 383, 661 N.W.2d 822. A "manifest necessity" is a "high degree" of necessity. Id. (citing Arizona v. Washington, 434 U.S. 497, 505 (1978); State v. Barthels, 174 Wis. 2d 173, 183, 495 N.W.2d 341 (1993)).

¶59 The majority determines that the trial court exercised sound discretion in declaring a mistrial because "[a]t the time the court declared a mistrial, the court believed the effect on the jury of introducing unnoticed Denny testimony could not be remedied by a jury instruction." Majority op., ¶34. It claims that "[a]dopting 'mechanical rules' such as requiring a circuit court to halt a criminal jury trial and hold a full evidentiary hearing on the admissibility of evidence the trial court determined should have been considered before the trial commenced, would be inconsistent with precedent." Id., ¶35. In arriving at this conclusion, the majority seeks to distinguish Seefeldt, 261 Wis. 2d 383, from the present case. But this distinction falls flat and Seefeldt cuts the other way.

¶60 In Seefeldt, the circuit court declared a mistrial after defense counsel discussed other acts evidence in the opening statement in violation of a pretrial order prohibiting the introduction of such evidence without first seeking a ruling

6

on its admissibility. Id., ¶6. This court determined that the circuit court was too hasty in granting a mistrial and did not exercise sound discretion for two reasons. It reasoned that the testimony likely would have ultimately been admissible and that alternatives to mistrial were not sufficiently considered. Specifically, this court concluded:

> First, the existence of Bart's 15 warrants would likely have been admissible during trial and the record does not reflect that the judge considered whether the evidence would ultimately be admissible. Second, the trial judge did not provide sufficient opportunity for the parties to present, and for the judge to consider, arguments regarding whether a mistrial should be ordered and the possible alternatives to a mistrial.

Id., ¶38.

¶61 In the eyes of the majority, "[n]one of those failures are present in this case." Majority op., ¶36. I disagree and conclude that Seefeldt is on all fours with the present case. To explain, just as in Seefeldt, the circuit court here did not consider during trial whether the evidence would ultimately be admissible. It essentially said that answering such a question during the trial was not possible, and that it would have asked for additional briefing on the subject, which was not practical in the middle of a trial. And like in Seefeldt, here the evidence was ultimately determined to be admissible.

¶62 In other words, the jury was not tainted by Cousin's testimony at all. The evidence it heard was proper and admissible. For this reason, like in Seefeldt "the record does not contain an adequate basis for a finding of manifest necessity." See Seefeldt, 261 Wis. 2d 383, ¶38.

7

¶63 I recognize that the circuit court was in a challenging position. Would it have been difficult for the circuit court to determine admissibility on a short timeline? Perhaps. But it was certainly possible to reach at least a preliminary determination of likely admissibility. And the constitutional protections against double jeopardy create a strong enough interest[4] that the court should have at least tried.[5]

B

¶64 Compounding its error, the majority lends its imprimatur to the trial court's treatment of the State's motion in limine. The trial court treated the motion as granted despite nothing in the record indicating that the pretrial court had decided the motion one way or the other.

¶65 The majority rejects Green's argument that the motion in limine filed by the State was not operative because the record does not demonstrate that the circuit court ruled on the motion. "Under those circumstances, and with neither party

---

[4] See State v. Martin, 121 Wis. 2d 670, 675-76, 360 N.W.2d 43 (1985) (describing the underlying idea behind the double jeopardy clause that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense" and stating that the clause "assures finality and fairness in the administration of the criminal justice system").

[5] The procedure for which I advocate here is not uncommon. Trials are often halted so legal issues can be argued outside the presence of the jury, sometimes accompanied by proffered witness testimony in the form of an offer of proof. A Denny hearing in the circumstances presented here could have been brief and routine.

8

requesting a ruling on any pending motions, it was not unreasonable for Judge Borowski to presume Judge Protasiewicz had granted the motion . . . ." Majority op., ¶38. Such a line of reasoning is unsupported by authority and requires the majority to read into the record information that simply isn't there.

¶66 Further, the majority does not say on what basis a trial court can simply presume a motion has been granted. It cites no authority that would allow it to conclude that the circuit court was not "unreasonable" in assuming a motion had been granted where nothing in the record indicates that this was the case. Our review is limited to the record, and we are bound by the record. State v. Aderhold, 91 Wis. 2d 306, 314, 284 N.W.2d 108 (Ct. App. 1979). No "presumption" can get around this precept.

¶67 Many questions are raised by the majority's approach. How far does this rule extend? What other motions can a judge simply "presume" were granted by another judge? Would it have been similarly "not unreasonable" if the circuit court had presumed that the motion was denied? It may be true that the State's motions in limine in a criminal trial are often rote and are generally granted. But there is no indication in this

9

record that it was here, leading the majority to simply read something into the record that is not there.[6]

¶68 The State's argument on this point plays into its larger insinuation that it was taken by surprise by Cousin's testimony. But if it was indeed caught off guard, it was in the end no one's fault but its own. Cousin's name was on Green's witness list, and a written statement existed, which the State never demanded in discovery. The State further allowed Cousin's initial testimony to pass without objection and completed its cross-examination before voicing any concern. See majority op., ¶11. Even then, the State did not actually request a mistrial, arguing only that the "solution was best left to the 'sound discretion' of the court." Id., ¶14.

¶69 Under the circumstances here, a mistrial was not the only solution. And it certainly was not a manifest necessity.

¶70 The double jeopardy clause demands that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged

---

[6] Even if the motion in limine were operative, the language of that motion does not necessarily preclude the admission of Cousin's testimony. Rather than citing Denny, the motion in limine cited State v. Scheidell, 227 Wis. 2d 285, 595 N.W.2d 661 (1999). As the court of appeals here recognized, Scheidell addressed unknown-third-party evidence, not known-third-party evidence, which is governed by Denny. State v. Green, No. 2021AP267-CR, unpublished slip op., ¶22 (Wis. Ct. App. Mar. 22, 2022). The Scheidell court was explicit that "Denny simply does not apply" to evidence of allegedly similar crimes committed by an unknown third party. Scheidell, 227 Wis. 2d at 297. There is thus no apparent overlap between Denny and Scheidell such that a citation to Scheidell in the motion in limine would somehow encompass Denny evidence.

10

offense, thereby subjecting him to embarrassment, expense and ordeal compelling him to live in a continuing state of anxiety and insecurity." State v. Kramsvogel, 124 Wis. 2d 101, 107-08, 369 N.W.2d 145 (1985). By allowing Green to be retried under these facts, the majority erodes the manifest necessity standard and conducts an end run around the protections afforded by the double jeopardy clause.

¶71 For the foregoing reasons, I respectfully dissent.

¶72 I am authorized to state that Justice REBECCA FRANK DALLET joins this dissent.

¶73 BRIAN HAGEDORN, J. *(dissenting).* Our review of a circuit court's decision granting a mistrial over the defendant's objection is generally deferential, but far less so than in other areas where we consider whether the court erroneously exercised its discretion. See Oregon v. Kennedy, 456 U.S. 667, 672 (1982); State v. Seefeldt, 2003 WI 47, ¶¶35-37, 261 Wis. 2d 383, 661 N.W.2d 822. This is because a defendant's constitutional rights are at stake when a mistrial is ordered. Kennedy, 456 U.S. at 671-72 (discussing U.S. Const. amend. V). So the law is that a circuit court should not order a mistrial unless a manifest necessity is shown, which is defined as a high degree of necessity. Arizona v. Washington, 434 U.S. 497, 505-06 (1978); Seefeldt, 261 Wis. 2d 383, ¶19. As part of this judgment call, a circuit court must consider alternatives to a mistrial. Seefeldt, 261 Wis. 2d 383, ¶38. If it does not, it has not applied the proper law and has erroneously exercised its discretion. See id.

¶74 This is a close case, but ultimately I conclude the circuit court erred. The heart of the matter is that Denny[1] evidence was introduced that caught the prosecutor and the court by surprise. The circuit court determined this was too much of a surprise because these issues are usually resolved before trial.

¶75 The problem with the circuit court's decision is that it did not consider an obvious and highly relevant alternative

---

[1] State v. Denny, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).

to mistrial: the possibility that the evidence might actually be admissible. As Justice Ann Walsh Bradley points out in her dissent, we have the odd circumstance of a mistrial being declared due to the introduction of evidence later deemed admissible. This seems discordant with the command that a court should order a mistrial only "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824). While I do not want to supplant the broad discretion given to circuit courts, I conclude that by failing to consider whether this evidence was admissible as an alternative to ordering a mistrial, the circuit court did not reasonably conclude a mistrial was necessary. For these reasons, I respectfully dissent.

¶76 I am authorized to state that Justice REBECCA FRANK DALLET joins this dissent.